## STATE OF FLORIDA v. HEPLER
### Case No. 83-10973 CF
Seventeenth Judicial Circuit, Broward County

May 31, 1984

### APPEARANCES OF COUNSEL

**Fred Damski,** State Attorney's Office, for plaintiff.

**Joseph Dawson** for defendant.

### OPINION OF THE COURT

J. LEONARD FLEET, Circuit Judge.

Defendant, Judith Marie Hepler, filed in this cause a Motion to Suppress certain evidence recovered from her apartment pursuant to a search warrant obtained on October 19, 1983, by Detective Rhodes, of the Public Safety Department of the City of Oakland Park, Florida.

After receiving written memorandums of law and oral argument upon the aforesaid motion, the Court announced that it would grant the Motion to Suppress and that a written order would be forthcoming setting forth with particularity the reasons for its decision. It is as a result of the continued research conducted by the Court that this Amended Order has been drafted and entered.

## INTRODUCTION

The facts herein discussed, unless expressly stated to the contrary, are drawn from the document entitled "General Affidavit and Application for Search Warrant" as executed by Detective Rhodes in the presence of the issuing magistrate on October 19, 1983. As will be seen in the discussion that follows, the consternation of this Court has been generated by the exceedingly poor draftsmanship and inexcusably bad language found in both the General Affidavit and the Search Warrant issued pursuant thereto.

Defendant, in her Motion to Suppress, advances two main reasons for this Court to enter an order prohibiting the State from utilizing evidence found in her apartment in the prosecution of this cause. In essence, Defendant alleges that the "General Affidavit and Application for Search Warrant" failed to establish sufficient probable cause to permit the issuance of the search warrant in the first instance and, even if the General Affidavit did establish probable cause for the issuance of the search warrant, the description of the items to be seized was too broad. The Court will address both of these issues as well as such other issues as this Court deems relevant and material.

## FACTUAL SUMMARY

On October 18, 1983, Detective Rhodes received a telephone call from Lewis Rheiner, the manager of the Southern Bank which is located within the city of Oakland Park. Mr. Rheiner informed Detective Rhodes that it appeared as though one of the bank's tellers (later identified to be the defendant herein, Judith Marie Hepler) had taken about $10,000 in cash from the bank. (Although the affidavit and search warrant are totally silent on this point, it is assumed by this Court that Mr. Rheiner also informed Detective Rhodes that certain documents belonging to the bank were also missing. If the Court does not make such common sense assumption, there is no logical explanation for the actions next taken by Detective Rhodes after his conversation with Mr. Rheiner. Mr. Rheiner, apparently, informed Detective Rhodes that Ms. Hepler resided at 1273 N.E. 39th Street, Oakland Park, for, immediately after the telephone conversation, Detective

Rhodes directed the Sanitation Department of the City of Oakland Park to recover from the residence of Ms. Hepler the receptacle utilized to receive garbage and debris. Upon examination conducted in the presence of Mr. Rheiner and another official of the Southern Bank, Detective Rhodes discovered in the trash bin a substantial number of papers (described as checks and teller tape from the teller machines), all identified as being the property of Southern Bank. The analysis of the documentation retrieved from the trash bin on October 19, 1983, confirmed that there was approximately $9,500 missing from the coffers of Southern Bank.

On a date not specified in the Affidavit, but which this Court concludes to be sometime between the telephone conversation with Mr. Rheiner on October 18, 1983, and the time the application for the search warrant was prepared on October 19, 1983, Ms. Hepler gave a sworn statement to Detective Rhodes wherein she denied absconding with the property of Southern Bank. Ms. Hepler affirmatively swore that, at 2:00 P.M. on October 17, 1983, she had delivered to the bank's security officer all records relating to her teller position. Although the Affidavit of Detective Rhodes is silent thereon, it is assumed by this Court that Ms. Hepler, in her denial of knowledge of the theft of the money that was missing from the bank, also declared that she had delivered to the appropriate person within the employ of Southern Bank all those funds for which she was required to account prior to her departure from the bank's premises on the date upon which the theft is alleged to have occurred.

With the information set forth above at his disposal, Detective Rhodes then caused to be prepared for submission to the issuing magistrate the application for search warrant and the search warrant now under attack. There is no mention in the written application for the search warrant just how Detective Rhodes knew that Ms. Hepler resided in apartment number six of the apartment complex located at 1273 N.E. 39th Street, Oakland Park, Florida, but that is the specific premises for which a search warrant was desired and for which the search warrant now under review was issued.

The affidavit prepared for, and executed by, Detective Rhodes, describes the physical structure in which Ms. Hepler's apartment is located as follows:

"One store (sic) C.B.S. structure located at 1273 NE 39 St. Apt #6. This apartment is located on the north side of the road way (sic) with the front facing south. The building is light brown in color with dark brown trim. The address number of 1273 is located on the front

of the apartment complex, and is easily seen from the street. The apartment to be search (sic) is apartment #6. This apartment is located in or about the center of the complex. The apartment complex is in the shape of a horse shoe. (sic) And is the last apartment or structure on the street when traveling (sic) west on NE 39 St. from NE 13 Ave. This apartment complex is met on the west side by a fence that also (sic) the boundary for the Sears warehouse. Apartment #6 is identified by a large number 6 on the door."

Complete with its grammatical horrors, the description of the place to be searched, as contained in the search warrant itself, is as follows:

"A one store (sic) structure located at 1273 NE 39th St. Oakland Park. This structure is an apartment complex. This apartment building is located on the north side of the roadway with the front of the building facing south. The building is light brown in color with dark brown trim. The address numbers of 1273 is (sic) located on the front of the building and is easily seen from the street. The apartment to be search (sic) is apartment #6. This individual apartment is is (sic) located in or about the center of the complex. This apartment complex is in the shape of a horse shoe. This apartment complex is the last structure on the north side of the street prior to the dead end. This apartment complex is met on the on the (sic) west side by a fence that also is the fence line for the Sears warehouse. Apartment #6 is identified by a large number 6 on the door."

The property sought by Detective Rhodes within the residence of Ms. Hepler (as he obviously thought apartment number six to be) was described in the search warrant as:

"Paper work and transaction belonging to the Southern Bank (the place were (sic) the defendant works). Also there should be large amounts of cash. This property would constitute evidence relevant to proving that a felony has been committed." (parenthetical separation in original)

The form of general affidavit utilized by Detective Rhodes has printed upon it the statement "that the following ground for issuance of a Search Warrant, as required by Chapter 933 exists, to wit:" after which there is typed in the following statement.

"Paper work belonging to the Souther (sic) Bank, where the defendant works. This paper work should show the total amount that the defendant had stolen from the bank. Also there should be a large amount of cash in the apartment. This property would constitute evidence relevant to proving that a felony has been committed."

89

The next page of the form utilized by Detective Rhodes, as above described, provides, in printing and in typing:

"and that the following property may be found therein, to wit. Paper work to show that the defendant did take money from the bank that she works for, that being the Southern Bank. Also a large amount of cash."

What is glaringly absent from Detective Rhodes' affidavit, but which was stipulated to by the State at the hearing on the Motion to Suppress is the fact that the garbage receptacle in which the relevant debris was found services the entire apartment complex, not just the residence of Ms. Hepler.

The search warrant actually issued in this cause expressly adopts by reference the General Affidavit and Application for Search Warrant and the contents thereof were made a part of the search warrant by reference thereto.

## SUFFICIENCY OF THE GENERAL AFFIDAVIT TO SUPPORT THE ISSUANCE OF THE SEARCH WARRANT

Article I, Section 12 of the Constitution of the State of Florida, which is patterned after the Fourth Amendment of the United States Constitution, recognizes the right of the people in this state to be secure in their persons, houses, papers and effects against unreasonable searches and seizures. No search warrant is permitted to be issued in this state except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons to be seized, and the nature of the evidence to be obtained. By amendment adopted in 1982, Article I, Section 12 of the Florida Constitution is to be construed in conformity with the Fourth Amendment of the United States Constitution, as interpreted by the United States Supreme Court.

The statutory codification of the fundamental principles contained in the constitutional sections above described is found in Florida Statute 933. This Statute reaffirms that no search warrant shall issue except upon proper affidavit being made, supported by oath of affirmation, which affidavit must (1) reflect probable cause, and (2) particularly describe the place to be searched and the person and thing to be seized. Florida Statute 933.06 requires that the affidavit must set forth "the facts tending to establish the grounds of the application or probable cause for believing that they exist." If the issuing magistrate is satisfied as to the sufficiency of the affidavit, a search warrant must issue, which search warrant must describe with particularity the place to be

searched, or the person named, for the property sought to be recovered. F.S. 933.07.

It is well settled in this state that facts constituting probable cause sufficient to justify the issuance of a search warrant for the search of a private dwelling need not meet the standard of conclusiveness and probability required of circumstantial evidence upon which a conviction may be based. *State v. Powers,* 388 So.2d 1050 (Fla. App. 4 1980). In the determination of probable cause, the issuing magistrate, like the jury deliberating upon the evidence in a criminal matter, is to utilize the common sense with which all normal persons are deemed to be endowed. The "common sense" test is the guiding principle enunciated by the United States Supreme Court in *Gates v. Illinois,* 100 S.Ct. 2317 (1983), 33 CrL 3109 (June 8, 1983). So long as a reasonable interpretation of the facts alleged in the application for the search warrant results in a reasonable inference of probable cause to believe that the desired objects are located in a particular place, the search of which is desired, it is not necessary that such objects be tied by direct evidence to such premises. *State v. Powers,* supra; *Younger v. State,* 433 So.2d 636 (Fla. App. 5 1983).

Addressing the information submitted to the issuing magistrate in the case now before the court, it is somewhat clear that the alleged theft of funds and records from the Southern Bank occurred on or about October 17, 1983, but was not discovered until October 18, 1983. The bank manager, upon discovery of the missing funds and records, informed Detective Rhodes that the loss occurred from the teller station occupied by Ms. Hepler and that Ms. Hepler resided in apartment 6 at 1273 N.E. 39th Street, Oakland Park, Florida.

Possessed of the foregoing information, Detective Rhodes obtained the trash receptacle from the apartment complex in which Ms. Hepler resided and examined the contents thereof in the presence of the manager of Southern Bank. Found in the garbage receptacle were documents that corroborated the amount of money deemed to be missing from Southern Bank. At some point in time after the telephone call from the bank manager, but before application for the search warrant was made, Ms. Helper gave a sworn statement to Detective Rhodes wherein she denied any knowledge of the missing funds and in which she stoutly maintained that she had delivered to the security officer of the bank on October 17, 1983, the very same documents that were found in the trash bin of her apartment complex.

Regardless of the fact that the word arrangement in the General Affidavit can be described, at best, as incompetent, the word arrange-

91

ment is not incapable of being deciphered. (It must be noted that a considerable amount of effort was expended upon such task by both counsel and the Court, an effort which need never be made when even rudimentary rules of grammar are adhered to by the writer of a document.) What is ultimately discerned from the affidavit is that Detective Rhodes believed that the unrecovered money would, more likely than not, be found in the apartment of Ms. Hepler, as would further documentation of the theft. That belief of Detective Rhodes was a common sense conclusion reasonably drawn from the information then in his possession.

As was written in *State v. Malone,* 288 So.2d 549, 550 (Fla. App. 1, 1974):

". . . The issue here is not whether the affiant knew beyond a reasonable doubt that the evidence was secreted in the defendant's residence but rather whether the affiant, Officer Parmenter, had reasonable cause to believe that the evidence was secreted in such residence.

 .   .   .   .   .   .   .   .   .   .   .

"When measured against the common sense, nontechnical standard adumbrated by the United States Supreme Court in *United States v. Ventresca* . . . as it relates to affidavits written by investigating police officers, we hold that the affidavit in this case meets the probable cause test and therefore was the proper basis for the issuance of the search warrant in question. . . ." (citations omitted)

In *Malone,* supra, in the affidavit for the search warrant, the issuance of which was deemed to have been proper, the investigating officer alleged only that the accused had been found at the scene of the homicide, that the victim of the murder had property in his custody prior to his death which could not be found and that it was likely that the property could be found in the defendant's apartment.

The utilization of conclusions in the sworn request for a search warrant is not permitted; the law restricts the Affiant to the use of, and the issuing magistrate to the consideration of, facts alone, *Churney v. State,* 348 So.2d 395 (Fla. App. 3 1977), and the reasonable inferences that can be drawn therefrom. See *State v. Williams,* 374 So.2d 609 (Fla. App. 3, 1979).

It is the conclusion of this Court that the facts alleged by Detective Rhodes in the General Affidavit and Application for Search Warrant were legally sufficient to justify the issuance of a search warrant for Ms. Hepler's residence.

92

## SUFFICIENCY OF DESCRIPTION OF THE PLACE TO BE SEARCHED

To every search warrant there is a litmus test that must be applied when an issue is made of the sufficiency of the description of the place to be searched. Specifically, in a search warrant, the description of the place to be searched must identify the place to be searched to the exclusion of all others. *State v. Brooker,* 9 FLW 925 (May 4, 1984) (Fla. App. 1, 1984). Even if the description contained in the search warrant of the place to be searched is colorably ambiguous, if the application of common sense will reveal the identity of the target place with sufficient clarity that it can be identified, the warrant will be deemed sufficient. An example of such colorable ambiguity is found in *Baum v. State,* 404 So.2d 195 (Fla. App. 1, 1981), where a warrant that referred to apartment number eight in a certain apartment building was deemed legally acceptable. Review of this decision was denied by the Florida Supreme Court. 412 So.2d 195 (Fla. 1982). It has been held that the designation of the wrong number of an apartment in a specific apartment building will not invalidate a search warrant that otherwise sufficiently describes the apartment in fact searched. The incorrect number was deemed to be surplusage and was to be disregarded. *State v. Gallo,* 279 So.2d 71 (Fla. App. 2, 1973), 11 ALR 3d 1330, 1340.

Utilizing the "common sense" approach discussed above, and disregarding all that might be construed as surplusage, the Court has, once again, read the affidavit of Detective Rhodes and the warrant issued pursuant thereto. On page one of the affidavit it is stated that the apartment to be searched is apartment six located at 1273 N.E. 39th Street, but no city is given. On page two of the general affidavit, it is stated that Ms. Hepler resides at 1273 N.E. 39th Street, Oakland Park. This Court deems it reasonable to conclude that Ms. Hepler's residence was located at 1273 N. E. 39th Street in the city of Oakland Park. See annotation at 11 ALR 3d 1330 for discussion of adequacy of description of a subunit of a multiunit structure.

## OVERBREADTH OF DESCRIPTION OF ITEMS TO BE SEIZED

As discussed above, it is necessary that the search warrant describe with particularity that which is sought to be seized upon the occasion of the execution of a search warrant. For the reasons given below, this Court must resolve this issue against the defendant.

In *United States, v. Osborne,* 630 F.2d 374 (C.A. 5, 1980) it was held to be legally sufficient to describe the property sought to be recovered from the automobile to be searched as a money order

machine and "any other evidence relating to the armed robbery. . . ." Such a description was deemed not to permit a general search but to permit only a limited search to locate instrumentalities of the specified offense of robbery of a United States Postal Service employee by use of a deadly weapon.

It is true that the actual description contained in the warrant issued in this case tends to be weak. The warrant herein describes the desired property only as "paper work, transactions and cash taken from Southern Bank." Because the issuing magistrate limited the search to those items and cash that could be identified as property of Southern Bank, there was established an external barometer against which standard a reasonable person could discern just what papers were to be included or excluded from the terms of the search warrant. Once again, it is the common sense test that is important to keep in the forefront of the analysis of the search warrant, rather than the finely tuned analytical minds of skilled attorneys. See *United States v. Strauss,* 678 F.2d 886 (C.A. 11, 1982). Additionally, when an exact description of the objects of the search is a virtual impossibility, the searching officer can only be expected to describe the generic class of the items being sought. *United States v. Davis,* 589 F.2d 904 (C.A. 5 1979). In the case at bar the Court finds that a more particular description of the money and bank records sought by Detective Rhodes was a virtual impossibility and, therefore, the complained of description passes constitutional muster.

## CONCLUSION

This Court is very much aware that the decision herein announced is the exact opposite of that announced upon the conclusion of the hearing on the Motion to Suppress. In open Court, when all oral argument was concluded, this Court informed the counsel for the respective parties that the Motion to Suppress was granted and that there would be a written order issued at a later date. In the preparation of this written order, this Court found it necessary to conduct some independent research which inevitably led the Court to the conclusion that its original decision was erroneous. Having once determined the error of its previous decision, it remained only for the appropriate action (the instant order) to be taken.

With one final comment this order will be concluded. The difficulties of this case center around the inexcusable poor grammar and sentence construction utilized in the General Affidavit and Application for Search Warrant as well as the Search Warrant itself. The writer of the documents need not be a college graduate to recognize the ineptness of

94

communication demonstrated in the matter now before the Court. It is difficult for the court to understand how a high school could permit one who so badly decimates the English language to obtain a diploma, which diploma stands as universal certification that the one to whom it has been issued is possessed of, at the least, minimal skills of communication. It is documents such as those that have been reviewed herein that contribute to the low esteem in which our system of law enforcement is held. Words serve but one function: the facilitation of communication. The failure to communicate effectively can result only in unnecessary anxiety and discord.

The foregoing considered, it is

ORDERED AND ADJUDGED that the Motion to suppress filed by Defendant, Judith Hepler, is hereby DENIED.