**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Allen Lynn OSBORNE and Keith Evans
Pendleton, Defendants–Appellants.**

No. 79–5660
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Nov. 13, 1980.

John R. Howes, State's Atty., Bradenton, Fla. (Court–appointed), for Osborne.

Ed Leinster, P.A., Orlando, Fla. (Court–appointed), for Pendleton.

Robert A. Leventhal, Asst. U. S. Atty., Orlando, Fla., for plaintiff–appellee.

Before TJOFLAT, FRANK M. JOHNSON, Jr. and GARZA, Circuit Judges.

GARZA, Circuit Judge:

On July 7, 1979, Postal Clerk Lois Elliott, working at the Post Office in Christmas, Florida, was approached by a man who stated, "we want your money." The man motioned for someone else to come in, then climbed over the counter and took out a gun. When the second man came in, Ms. Elliott was told to sit quietly in a chair and was taped to it.

The two men took the post office money order machine and cash from a drawer. After they left, Ms. Elliott looked through a window and saw an old yellow station wagon leaving the parking lot and turning on Highway 50. It bore a Florida tag with the first letter "F," possibly followed by "XP."

The clerk telephoned the police, stated that she had been robbed by two white men in their mid–twenties, and gave the vehicle description. Orange County Sheriff's Deputy Nasi arrived at the Post Office while she was still speaking on the telephone. The deputy obtained Ms. Elliott's description of the two men in the vehicle.

Deputy Sheriff Dennis was patrolling Highway 50 at this time. He heard a police radio call relaying Ms. Elliott's description. The deputy then saw a vehicle answering the description and pulled it over. The driver, Appellant Pendleton, jumped out and came toward him. Deputy Dennis gave a description of Pendleton over the radio as he approached, and heard verification that he fit the description of one of the robbers.

The deputy went to the station wagon, and was told by Pendleton that someone was asleep in the back seat. That person was Appellant Osborne, who was "awakened" and escorted to the sheriff's car. Another officer arrived, and the Appellants were placed under arrest. Deputy Dennis walked to the station wagon and through its window saw a cardboard box containing a piece of equipment bearing the Post Office emblem.

The deputy, following orders, brought Pendleton and Osborne back to the Post Office for an on–the–scene identification. Ms. Elliott was told that two individuals had been stopped in the area, and she was requested to "look in the car and see if she saw any person that she might have seen or connected with" the robbery. She recognized the Appellants.

Postal Inspector Netherton arrived at the place where the station wagon was stopped, and through the car's window saw the money order machine bearing a serial number furnished by Ms. Elliott. The inspector sealed the car and had it towed to a local wrecker service. He then obtained a search

warrant authorizing a search for the machine and "any other evidence relating to the armed robbery of the Christmas Florida Post Office." The search by postal inspector McClelland disclosed a gun which fit Ms. Elliott's description of the weapon used in the robbery, a roll of silver duct tape similar to that used to bind her, and a cowboy hat which was identified as having been worn by one of the robbers. Various other articles were also found.

Osborne and Pendleton were indicted for robbery of a United States Postal Service employee by use of a deadly weapon in violation of 18 U.S.C. §§ 2114, 2. They pled not guilty, and filed a motion to suppress the items seized from their car. A hearing on the motion was held at which the following colloquy initially occurred:

THE COURT:

\* \* \* \* \* \*

All right, are you prepared to go forward with your evidence at this time?

MR. LEINSTER: Your Honor, Mr. Leventhal and I have conferred about that. As I understand it, we have alleged, part of the Motion to Suppress, that the search was not limited to the search warrant, which would place the burden to proceed on the Government.

\* \* \* \* \* \*

THE COURT: Well, it is my view that the burden of proof is on the movant at least insofar as to suppress the items seized is concerned . . .

The motion was denied and the cause proceeded to trial. At trial, the district court denied the Appellants' request for separate verdict forms to go to the jury on the question of whether *each* appellant was guilty of placing a person's life in jeopardy. A jury verdict of guilty was rendered, and appellants were sentenced to a period of incarceration of twenty–five years.

Appellants urge the same points of error in a joint brief. They contend that the trial court committed error by placing the burden on them to proceed on the Motion to Suppress. The second point complains of the denial of that motion, on the grounds

that (1) such probable cause as would justify the stopping of the Appellants' car was not shown; (2) the search warrant was overly broad and violative of the Fourth Amendment specificity requirements; (3) the authorities failed to advise appellants of their options other than impoundment, as required by Florida law; and (4) that the "post–arrest lineup" was fatally suggestive. They finally complained that the district court erred in denying their request for jury verdict forms for each defendant.

## THE BURDEN OF PROOF

Osborne and Pendleton assert that the district court erred in placing the burden upon them at the suppression hearing. They contend that the search was initially conducted without a warrant, apparently referring to the viewing of the money order machine through a car window, and direct our attention to cases holding that where a defendant produces evidence that a search occurred without a warrant, the burden shifts to the government to justify the search. *see U. S. v. De La Fuente*, 548 F.2d 528, 533 (5 Cir. 1977).

 Appellants' reliance is misplaced. Here, the deputy saw the machine in plain view, causing it to be subject to seizure without a warrant. *See Walker v. Beto*, 437 F.2d 1018, 1019 (5 Cir. 1971). After viewing the machine, the deputies obtained a warrant and the items seized were taken from the car pursuant thereto. Where a search is conducted under the authority of a warrant, the defendant challenging the search carries the burden of showing the warrant to be invalid. *U. S. v. De La Fuente, supra* at 534. Certainly, if a "plain view" observation affords a valid basis to seize an item, it must furnish a valid basis for a search warrant. The burden of proof was properly placed.

## THE STOP AND "PROBABLE CAUSE"

 Appellants contend that the vehicle stop by Deputy Dennis was without probable cause. On the facts of this case, we find the argument to be almost frivo-

lous. A police officer may make an investigative stop if the circumstances are sufficient to enable the officer reasonably to suspect that an individual is engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). "Probable cause is not required to justify an investigative stop; reasonable suspicion is sufficient." *U. S. v. Hall*, 557 F.2d 1114, 1116 (5 Cir. 1977). In *Hall*, the officer saw a red 1969 Ford driven by a light–complected black male (which fit the broadcast description), heading away from the vicinity of a bank robbery within twenty minutes after it occurred. This court had no difficulty in finding a stop to have been proper. In this case, the officer saw an older model yellow station wagon driven by a white male (fitting the broadcast description) heading away from the vicinity of the robbery within a few minutes after it occurred. Appellants have no basis for an objection to the stop.

## THE SCOPE OF THE WARRANT

Osborne and Pendleton argue that the search warrant authorized an invalid "general search" because it described as objects of the search a money order machine and "any other evidence relating to the armed robbery ..." It is argued that if the deputies were aware of the other items to be seized, i. e., the gun, tape, and hats, they should have been included in the warrant.

■ A search warrant should not issue to allow a general exploratory search performed with the hope of discovering evidence of a crime. A warrant must be directed towards objects specified in it or for other instrumentalities by which the crime charged had been committed. *Gurleski v. U. S.*, 405 F.2d 253, 258 (5 Cir. 1968). Even with the broad language quoted above, the warrant before us limited the search to the instrumentalities of the specified offense.

## ALTERNATIVES TO IMPOUNDMENT

Appellants argue that the evidence should have been suppressed because they were not advised that they had an option other than impoundment of the vehicle. It is asserted that "the law in Florida is clear that a law enforcement officer must advise an arrestee of alternatives to impoundment of the vehicle." *State v. Jenkins*, 319 So.2d 91 (Fla.4th Dist.Ct.App.1975).

■ Osborne and Pendleton cite no federal case law to support their opinion, and we find the removal of the vehicle to have been appropriate. The vehicle was stopped on an open highway and obviously contained a stolen item. Since the arrests of its occupants were valid, the officers were justified in having it removed to headquarters. *See U. S. v. Pruett*, 551 F.2d 1365, 1369–70 (5 Cir. 1977); *Jackson v. Alabama*, 534 F.2d 1136 (5 Cir. 1976); *Fry v. Estelle*, 527 F.2d 420, 422 (5 Cir. 1976).

## POST–ARREST IDENTIFICATION

The defendants next attack the procedure used by the officers to obtain Ms. Elliott's post–arrest identification. First, it is argued that the appellants were unlawfully taken into custody and any subsequent identification while in custody would constitute "fruits of the poisonous tree." Secondly, the procedure is said to have been so suggestive as to amount to a violation of due process. Having found the stop and arrest to have been proper, we proceed to the second argument.

■ It is well established that in determining the admissibility of identification testimony, we look to the totality of the circumstances and consider certain factors to determine the reliability of the identification:

(1) The opportunity of the witness to view the perpetrator at the time of the crime.

(2) The witness' degree of attention during the crime.

(3) The accuracy of the witness' prior description of the criminal.

(4) The level of certainty demonstrated at the confrontation.

(5) The time between the crime and the confrontation.

*Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). Against these factors is to be weighed the corrupting effect of a suggestive identification. *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). While the identification procedure utilized by the authorities in this case was inherently suggestive, *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967), the evidence gives ample assurance that the reliability of Ms. Elliott's identification was not outweighed by the suggestiveness of the "show–up." The record shows that the witness had several minutes to view the perpetrators closely, and that she gave them close attention. Her descriptions to the police were precise, detailed, and accurate. She was not uncertain in identifying appellants when they were returned to the Post Office only a few minutes after the crime.

### SEPARATE VERDICT FORMS

 Osborne and Pendleton finally argue that the trial court erred in refusing a request for separate verdict forms on the question of whether each appellant was guilty of placing a person's life in jeopardy. The record reveals the judge gave the jury separate jury forms for each appellant on the question of guilty for "the offense of robbery, as charged in count one of the indictment," and a single form reading,

> We, the jury, find beyond reasonable doubt that in effecting the robbery alleged in the indictment, one (or both) of the defendants who have been found guilty of such robbery *did/did not* put the life of Lois Elliott in jeopardy by the use of a dangerous weapon."

The trial court reasoned that if one of the appellants put life in jeopardy, the other was criminally responsible, relying on *U. S. v. Parker*, 542 F.2d 932, 934–35 (5 Cir. 1976), in which this court stated:

> Under 18 U.S.C. § 2, one who aids and abets the commission of a crime is punishable as a principal. Therefore, even assuming arguendo that Parker was unarmed during the robbery, the fact that his confederate was armed would sustain

his enhanced sentence under 18 U.S.C. § 2114.

Appellants' argument is meritless. The one–count indictment charges them with robbery and placing Ms. Elliott's life in danger. Separate forms were given to the jury on the question of guilt as charged in the indictment. Having found appellants guilty of the robbery, the jury was given another form to answer whether Ms. Elliott's life had been put in danger, the purpose of the question going to enhancement of the sentence. It was not material *who* put her life in danger, but only *that it was in danger.* Under *Parker*, where both perpetrators were found guilty of the offense, both were equally culpable for endangering a life.

All of appellants' assignments of error having been found meritless, the judgment of the district court must be

AFFIRMED.