**STATE of Iowa, Appellee,**

v.

**Greggory TODD, Appellant.**

No. 89–1475.

Supreme Court of Iowa.

April 17, 1991.

William J. Conroy, Jr., Cantrall, Ill., for appellant.

Thomas J. Miller, Atty. Gen., Sarah J. Coats, Asst. Atty. Gen., James Smith, County Atty., and Kathleen Deal and Joseph Weeg, Asst. County Attys., for appellee.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, CARTER, and ANDREASEN, JJ.

LARSON, Justice.

Greggory Todd, who was convicted of cockfighting under Iowa Code section 725.-11 (1987), challenges the constitutionality of the statute, the search of his property, seizure of cash from people on the premises, and the court's refusal to dismiss the case under the speedy trial provisions of Iowa Rule of Criminal Procedure 27(2)(b). We affirm.

I. *The Vagueness and Overbreadth Arguments.*

Todd was convicted under Iowa Code section 725.11, which provides:

> If any person keep or use, or in any way be connected with, or be interested in the management of, or receive money for the admission of any person to, any place kept or used for the purpose of fighting or baiting any bull, bear, dog, cock, or other creature, *or engage in, aid, abet, encourage, or assist* in any bull, bear, dog, or cock fight, or a fight between any other creatures, the person shall be guilty of a serious misdemeanor.

(Emphasis added.) He challenges this section on both vagueness and overbreadth grounds under both the United States and Iowa Constitutions. There is, of course, a

strong presumption that a challenged statute is constitutional, *Knepper v. Monticello State Bank*, 450 N.W.2d 833, 838 (Iowa 1990); *Sloman v. Board of Pharmacy Examiners*, 440 N.W.2d 609, 611 (Iowa 1989); *State v. Duncan*, 414 N.W.2d 91, 95 (Iowa 1987), and a challenger must demonstrate its unconstitutionality beyond a reasonable doubt. *Duncan*, 414 N.W.2d at 95; *State v. Wagner*, 410 N.W.2d 207, 214 (Iowa 1987).

A. *The vagueness issue.* Vagueness arguments arise from the due process provisions of the fifth and fourteenth amendments to the United States Constitution and article I, section 9 of the Iowa Constitution. The root of the vagueness doctrine is a rough idea of fairness. *Colten v. Kentucky*, 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584, 590 (1972); *Sloman*, 440 N.W.2d at 611.

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

*Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222, 227–28 (1972) (footnotes omitted).

■ To withstand a constitutional attack, a penal statute must satisfy two standards: (1) it must give a person of ordinary intelligence fair notice of what is prohibited, and (2) it must provide an explicit standard for those who apply it. *Duncan*, 414 N.W.2d at 96; *Wagner*, 410 N.W.2d at 214.

■ Todd argues that the language of section 725.11 prohibiting persons from being "connected with, or … interested in" such contests is so vague as to be unenforceable. However, one who engages in conduct clearly proscribed by the statute may not successfully challenge it for vagueness. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362, 369 (1982); *Duncan*, 414 N.W.2d at 96. The State argues that Todd falls squarely under this rule. The cockfight took place on his property, and Todd was personally present.

■ Todd was not charged with violating the first half of section 725.11, "being connected with, or … interested in the management of" the premises; he was charged with actually "engag[ing] or assist[ing] in a cockfight" under the last half of section 725.11. The issue therefore is whether the latter half of section 725.11, prohibiting active participation in such contests, is unconstitutionally vague. *See State v. McKee*, 392 N.W.2d 493, 494 (Iowa 1986) (court severed portion of statute challenged for vagueness).

We believe that the language of section 725.11 which makes it a crime to "engage in, aid, abet, encourage, or assist" in any cockfight is sufficiently clear to give a person of ordinary intelligence fair notice of what is prohibited and provide the specific standards required for those who enforce it, *Duncan*, 414 N.W.2d at 96; *Wagner*, 410 N.W.2d at 214, and is not unconstitutionally vague under either the United States or Iowa Constitutions.

■ B. *The overbreadth issue.* Todd also contends that section 725.11 is overbroad. A statute is overbroad, for constitutional purposes, if it not only forbids conduct constitutionally subject to proscription, but also sweeps within its ambit those actions ordinarily deemed to be constitutionally protected. *City of Des Moines v. Lavigne*, 257 N.W.2d 485, 487 (Iowa 1977); *State v. Farrell*, 209 N.W.2d 103, 108 (Iowa 1973). Todd argues that section 725.11 is overbroad because it impedes the

right of free association. This argument, like the vagueness argument, is based on Todd's claim that he was prosecuted for merely being present at the cockfight. As already noted, however, he was charged with more; he was charged with "engag[ing] in, or assist[ing]" in the fight.

■ An overbroad governmental regulation may be invalid on first amendment grounds even when the litigant's activity is not itself constitutionally protected. *Board of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 574, 107 S.Ct. 2568, 2571–72, 96 L.Ed.2d 500, 507 (1987); *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 503, 105 S.Ct. 2794, 2801, 86 L.Ed.2d 394, 405 (1985).

However, "the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772, 783 (1984).

The Supreme Court has also stated that, "particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830, 842 (1973).

Even if some of the alternative means of violating section 725.11 could be interpreted as restricting mere presence at the event, a matter as to which we have considerable doubt, application of overbreadth principles would result only in partial invalidity of the statute. *See Brockett*, 472 U.S. at 503–04, 105 S.Ct. at 2802, 86 L.Ed.2d at 406. Here, Todd was charged with more than mere presence at the event. He was charged with active participation, under the "engage in, aid, abet, encourage, or assist" alternative of section 725.11. This is a description of "easily identifiable and proscribable ... conduct," *United States Civil Serv. Comm'n v. National Ass'n of Letter Carriers*, 413 U.S. 548, 580–81, 93 S.Ct. 2880, 2898, 37 L.Ed.2d 796, 817 (1973), which falls within the statute's "plainly

legitimate sweep," *Broadrick*, 413 U.S. at 615, 93 S.Ct. at 2917, 37 L.Ed.2d at 842. We reject Todd's overbreadth argument.

## II. *The Issuance of the Search Warrant.*

■ Todd challenges the issuance of the search warrant on the ground that it lacked probable cause. Because the challenge is on constitutional grounds, we review the case de novo. *State v. Weir*, 414 N.W.2d 327, 329 (Iowa 1987).

The test for probable cause is whether a person of reasonable prudence would believe a crime was committed on the premises or that evidence of a crime could be located there. *Id.* at 330; *State v. Sykes*, 412 N.W.2d 578, 583 (Iowa 1987); *State v. Woodcock*, 407 N.W.2d 603, 604 (Iowa 1987). Doubtful or marginal questions are usually resolved by the preference to be accorded warrants. *State v. Leto*, 305 N.W.2d 482, 485 (Iowa 1981).

■ The application for this warrant revealed that a confidential informant had told the officers the date, time, and place of the cockfight. To verify this information, the informant made two telephone calls to unidentified persons, and these calls were monitored by the officers. The calls confirmed the date, time, and place as disclosed by the informant. In addition, a supporting affidavit established that the officers' photographs of the location conformed to the description given by the informant.

Todd complains that there was no determination made as to the credibility of the two unnamed individuals who had been called by the informant to confirm the informant's credibility. In other words, he claims that there were two layers of confidential informants, and only the credibility of the upper layer of informant was established by the officers.

The telephone calls to the unidentified persons, however, were made only to allow the officers to test the credibility of the "upper layer" informant, and the substance of those calls was not relied on to obtain the warrant. Under these circumstances,

it was not necessary for the magistrate to verify the credibility of the lower level informants.

 Todd also complains that the court erred in refusing to identify the confidential informant whose information was used in obtaining the search warrant. It is a general rule that the prosecution cannot ordinarily be required to divulge the identity of an informant as such, as distinguished from a witness to the event constituting the basis for the charge. *State v. Luter,* 346 N.W.2d 802, 810 (Iowa 1984). Todd bears the burden of showing the necessity for disclosure of the informant's identity, *State v. Sheffey,* 243 N.W.2d 555, 559 (Iowa 1976), and it is not sufficient to show that the identity of an informer might be helpful in preparation of the defense. *Id.* We believe that Todd's argument for identification of the informants is supported by nothing more than speculation that identification might somehow be helpful in his defense. We hold that this is insufficient.

### III. *The Warrant Description.*

 The warrant in this case authorized the seizure of:

1. Any and all evidence showing the use of animals in an exhibition of fighting.

2. Monies from the receipt of gambling or participation of the animal fighting.

 Todd contends that this language was so broad that it constituted a "general warrant," violating the fourth amendment, which requires a warrant "particularly describing the place to be searched, or the person and things to be seized." But the requirements for warrants are practical and not abstract. *State v. Bakker,* 262 N.W.2d 538, 545 (Iowa 1978). A reasonably specific warrant does not mean that the warrant must be "elaborately detailed," *United States v. Reed,* 726 F.2d 339, 342 (7th Cir.1984), or enable authorities "to minutely identify every item for which they are searching," *United States v. Prewitt,* 553 F.2d 1082, 1086 (7th Cir.), *cert. denied,* 434 U.S. 840, 98 S.Ct. 135, 54 L.Ed.2d 104 (1977).

 A description is sufficiently particular when it enables the searcher reasonably to ascertain and identify the things to be seized. *United States v. Betancourt,* 734 F.2d 750, 754–55 (11th Cir.), *cert. denied,* 469 U.S. 1021, 105 S.Ct. 440, 83 L.Ed.2d 365; 469 U.S. 1076, 105 S.Ct. 574, 83 L.Ed.2d 514 (1984); *United States v. Wuagneux,* 683 F.2d 1343, 1348 (11th Cir. 1982), *cert. denied,* 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983). When a warrant affiant has probable cause but cannot give an exact description of the materials to be seized, a warrant will generally be upheld if the description is as specific as the circumstances and the nature of the activity under investigation permit. *See United States v. Santarelli,* 778 F.2d 609, 614 (11th Cir.1985).

In *United States v. Osborne,* 630 F.2d 374, 378 (5th Cir.1980), the court upheld a warrant authorizing seizure of "any and all evidence relating to the armed robbery," because the warrant limited the search to the instrumentalities of the specified offense. Like the warrant in *Osborne,* the warrant in question limited the search to evidence of a specified offense, and the searcher could reasonably ascertain and identify the items to be seized.

### IV. *Execution of the Search Warrant.*

 When the officers went to Todd's barn to serve the search warrant, they simply walked through the barn door and entered without challenge. They looked around the barn for several minutes before being met by a Corlis Lenze who, it developed, was there for the cockfight. The officers, who were dressed in plainclothes, inquired whether they could stay. Lenze told them they could if they were not "the law." The officers gave no clear response, and Lenze was apparently satisfied that they were not the law. The officers continued to look around the barn, noting the items which could be used in connection with cockfighting. The warrant still had not been served when, ten to fifteen minutes after they first entered the barn, one

of the officers spotted a person who might recognize him. They left the barn and, within a few minutes, returned with uniformed officers to serve the warrant and complete the search.

Todd's motion to suppress asserted:

17. That agents Bogle and Smith's preexecution entry into the "white metal barn" constituted a view-search for any criminal activity and evidence related thereto.

18. That the Bogle/Smith view-search was not made pursuant to the lawful execution of the search warrant.

19. That the Bogle/Smith view-search was not authorized by any lawful search warrant.

20. That Iowa law and the issuing magistrate's command respecting the service and execution of the search warrant does not permit law enforcement agents to engage in a pre-search warrant execution entry and search to conduct an exploratory fishing expedition to gather evidence and figure out what items need to be seized.

. . . .

24. That agents Bogle and Smith's warrantless entry and search of the "white metal barn" for evidence constituted an "unreasonable search and seizure."

25. That any evidence incriminating the Defendant as gathered by agents Bogle or Smith during their pre-search warrant execution entry-search was obtained in violation of Defendant's right of privacy and in violation of Defendant's right against unreasonable searches and seizures under the fourth amendment to the U.S. Constitution and article I section 8, of the Constitution of the State of Iowa.

While not specifically stated as such in Todd's motion to suppress, it appears that he objected to the preliminary search because it was not accompanied by notice,[1] it was not authorized by the search warrant, and it amounted to a search without following the requirements for service of the warrant.

The State argued, and the district court ruled, that this preliminary search was reasonable and that Todd had impliedly invited the public to do business, therefore losing any reasonable expectation of privacy. *See Lewis v. United States*, 385 U.S. 206, 211, 87 S.Ct. 424, 427, 17 L.Ed.2d 312, 316 (1966).

*Lewis*, however, must be distinguished because there the invitation preceded the entry. Here, any "invitation" from Lenze came after the officers had already been in the building for several minutes. Nor was this, as argued by the State, an entry by ruse as in *State v. Iverson*, 272 N.W.2d 1, 5 (Iowa 1978); any ruse in the officers' implication to Lenze that they were not "the law" occurred well after their initial entry.

A. *The notice requirement.* Although the record is not clear as to the circumstances surrounding the officers' initial entry into the barn, they apparently just opened the door and walked in without notifying anyone that they were entering. In fact, it appears that no one was near the door to be notified; the first contact inside the building was with Lenze, who confronted the officers several minutes after their entry.

The fourth amendment does not necessarily require advance notice, *see, e.g., United States v. Gervato*, 474 F.2d 40, 44 (3d Cir.), *cert. denied*, 414 U.S. 864, 94 S.Ct. 39, 38 L.Ed.2d 84 (1973), although there are sound reasons for the general rule requiring prior announcement: (1) prevention of violence, (2) prevention of unexpected exposure of private activities of the occupants, and (3) prevention of property damage from a forced entry. *See Payne v. United States*, 508 F.2d 1391, 1393–94 (5th Cir.), *cert. denied*, 423 U.S. 933, 96 S.Ct. 287, 46 L.Ed.2d 263 (1975); *State v. Far-*

---

1. Todd argues on appeal that the original entry into the barn, which was made by simply opening the door, "violated knock and announce principles." *See* Iowa Code § 808.6. He did not, however, raise this issue in his motion to suppress, and we cannot consider it for the first time here. We will consider this "knock and announce" issue as part of the broad issue of notice.

*ber*, 314 N.W.2d 365, 369 (Iowa 1982); 2 W. LaFave, *Search and Seizure* § 4.8(a), at 124–25 (1978).

■ In this case, the entry was not confrontational; it did not involve a residence in which "private activities" might be expected to be taking place, and there was no property damage. The officers simply opened the door and walked in. The general rule is that, as to buildings outside the dwelling and curtilage, no advance notice is required for a search. 2 W. LaFave, *Search and Seizure, A Treatise on the Fourth Amendment* § 4.8(b), at 276–77 (2d ed. 1987). In view of this general rule and the circumstances of this entry, the search was not unreasonable.

■ B. *The scope of the warrant.* Todd claims that the officers' "view search" gathered information which was beyond the scope of the warrant. We disagree; what the officers saw during the preliminary search was evidence of the crime covered by the warrant, just as were the rooster cages and other physical property. *See United States v. New York Tel. Co.*, 434 U.S. 159, 170 n.18, 98 S.Ct. 364, 371 n.18, 54 L.Ed.2d 376, 388 n.18 (1977). *New York Telephone Co.* involved the application of Federal Rule of Criminal Procedure 41(b), which authorizes the issuance of a warrant to

> search for and seize any (1) *property that constitutes evidence of the commission of a criminal offense;* or (2) contraband, the fruits of crime, or things otherwise criminally possessed; or (3) property designed or intended for use or which is or has been used as the means of committing a criminal offense.

*Id.* at 169, 98 S.Ct. at 370, 54 L.Ed.2d at 387 (emphasis added). The Supreme Court held that intangibles were "property" under the language of federal rule 41(b) even though they would not ordinarily fit within the definition of property. *Id.* at 170 n.18, 98 S.Ct. at 371 n.18, 54 L.Ed.2d at 388 n.18.

We conclude that the officers' observations on their initial entry into the barn was "evidence showing the use of animals in an exhibition of fighting" within the description of the warrant and that these observations were properly "seized" by the officers. We therefore reject Todd's argument that this initial entry was a warrantless or unreasonable search.

V. *The Seizure of the Cash.*

■ Todd complains that the officers saw money changing hands between only two of the twenty-eight people present at the cockfight, yet they seized money from almost all of them. He claims this seizure exceeded the scope of the warrant because it was not apparent that the money had been used in the gambling.

■ Todd fails to show that he has any standing to object to seizure of the money from the other persons present. As to him, the money clearly falls within the scope of the search warrant which provided for seizure of "moneys from the receipt of gambling or participation in the animal fighting." The officers saw money changing hands at the cockfight, and it was reasonable to assume that through Todd's hosting of the cockfight and participation in it, he had earnings from the use of the premises or from the actual cockfight. In either event, this money was properly seized under the warrant.

VI. *The Speedy Trial Issue.*

■ Todd's final contention is that his right to a speedy trial under Iowa Rule of Criminal Procedure 27(2)(b) was violated. Todd was arrested on January 28, 1989, and the county attorney's information was filed on February 24, 1989. The ninety-day speedy trial deadline under rule 27(2)(b) was therefore May 25, 1989, but the trial did not commence until July 10.

■ If trial has not commenced within the ninety-day period of rule 27(2)(b), the case must be dismissed unless: (1) the defendant has waived his right to a speedy trial, (2) the delay is attributable to the defendant, or (3) there is "good cause" for the delay. *State v. Bond,* 340 N.W.2d 276, 279 (Iowa 1983). The burden is on the State to show one of these exceptions.

■■■■■■■■■■■■■■■■■■

Here, the State relies on the good-cause exception.

■■■■■ In determining good cause, four factors must be analyzed: (1) length of delay, (2) reason for the delay, (3) the defendant's assertion of his right to speedy trial, and (4) any prejudice resulting from the delay. *State v. Petersen,* 288 N.W.2d 332, 334 (Iowa 1980). The test on appeal is whether the trial court abused its discretion in refusing to dismiss. *State v. Donnell,* 239 N.W.2d 575, 579 (Iowa 1976).

Approximately one week before the trial was to commence, the defendants (several were still joined at that time) filed motions to suppress. The hearing on the motions was set for the day prior to the trial; however, attorneys representing other defendants in the combined trial were not ready to proceed. The next available date was May 23, two days before the expiration of the ninety days, but some of the State's witnesses would not be available at that time.

Under these circumstances, the judge did not abuse his discretion in continuing the case to permit resolution of the suppression motions, which might have been dispositive of the cases.

We find no basis for reversal.

AFFIRMED.