STATE of Iowa, Appellant,

v.

Richard John ROBERTSON, Appellee.

STATE of Iowa, Appellant,

v.

Kevin N. CORNWELL and Tamara J. Cornwell, Appellees.

No. 91–1863.

Supreme Court of Iowa.

Jan. 20, 1993.

Bonnie J. Campbell, Atty. Gen., Bridget A. Chambers, Asst. Atty. Gen., David J. Welu, County Atty., and Wayne M. Reisetter, Asst. County Atty., for appellant.

Robert J. Kromminga, Des Moines, for appellee Robertson.

John R. Sandre of Scalise, Scism, Sandre, McConville and Holliday, Des Moines, for appellees Cornwell.

Considered by McGIVERIN, C.J., and HARRIS, SCHULTZ, NEUMAN and SNELL, JJ.

SNELL, Justice.

In this interlocutory appeal, the State challenges a district court ruling requiring the State to disclose the identity of a confidential informant during discovery for a motion to suppress evidence. The appellees, Richard Robertson and Kevin and Tamara Cornwell, challenge the sufficiency of probable cause to issue search warrants. A confidential informant gave police officers information that Robertson and the Cornwells were engaged in drug trafficking and dealing from their neighboring West Des Moines homes. The information was used in applications for search warrants, which led to a search and seizure of incriminating evidence. The State filed criminal charges and trial informations against Robertson and the Cornwells. Subsequently, they each filed a motion to suppress the evidence seized under the search warrants and a motion to disclose the name of the confidential informant used to obtain the warrants. The cases were consolidated for the purpose of a hearing on their motions to suppress and motions to disclose. Based on alleged errors in the search warrants, the trial court ruled that the confidential informant must be disclosed and made available for discovery by the defendants in order to rule on the sufficiency of probable cause to issue the warrants. We reverse.

I. *Background facts and proceedings.*

In March of 1991, police officer George Callas met with a confidential informant to discuss the alleged criminal activities of Richard Robertson and Kevin Cornwell. Callas did not take notes at this meeting. He recalled the information given from his memory and from notes taken by another officer who had also spoken with the same informant. The information given by the informant was largely corroborated by a subsequent police investigation. The information and corroborating evidence supplied a substantial basis for requesting the search warrants and for the magistrate's finding of probable cause to issue the warrants. The following facts were included in Callas' affidavit in the applications for the warrants.

The informant reported that Richard Robertson and Kevin Cornwell were friends, living near each other in rural West Des Moines. The informant stated that Robertson and Cornwell were partners in trafficking and dealing marijuana. The informant also stated that since Robertson's arrest, Cornwell had taken over the dealing activities.

Subsequent police investigation corroborated the information that Richard Robertson and Kevin Cornwell lived in rural West Des Moines and were friends. Richard Robertson had previously been arrested and pleaded guilty to the charge of possession with intent to deliver marijuana in 1989. The arrest resulted from a search of his home which yielded evidence of drug dealing. Robertson was then serving two years probation for the charge.

The informant stated that both Robertson and Cornwell kept large sums of cash in their homes that they had received from the marijuana business. The informant told Callas that in mid-March the informant observed approximately fifty to 100 pounds of marijuana and a large amount of cash in the Cornwell home; the informant saw Kevin and Tamara Cornwell count cash in excess of $72,000.

To corroborate the information that marijuana was being sold, Officer Callas observed an individual previously convicted of delivery of marijuana arrive at the Cornwell residence on several occasions for short periods of time. The information regarding large sums of cash and large scale drug trafficking activity was partially corroborated by the evidence obtained from the search of the Robertson home executed by the Des Moines Police Department in 1989, in which cash and items consistent with drug trafficking activity were seized.

The informant told Callas that he had observed Doug James purchase a quarter pound of marijuana for $250 at the Cornwell residence. The informant also stated

that Doug James lives with Michelle Robertson, Richard Robertson's sister. Police investigation confirmed that James and Michelle Robertson were living together, and that Michelle Robertson was convicted of delivery of a schedule II controlled substance, cocaine, in July of 1988.

The source of the marijuana, according to the informant, was Austin, Texas. The informant stated that Robertson and Cornwell, occasionally with a third individual, would drive to Topeka, Kansas, to meet a supplier from Austin for a delivery of marijuana. The informant reported that Robertson and Cornwell would return the same day or within a day's time. They would transport the marijuana back to Cornwells' residence, the location of the dealing operation. Robertson and Cornwell would bring 100 to 150 pounds of marijuana to West Des Moines in these deliveries. The marijuana would be packaged in ten pound bricks, wrapped in cellophane and packed in large coolers. The informant stated that in the past the informant had gone to Austin, Texas, with Robertson to meet the suppliers. On this trip, the informant observed hundreds of pounds of marijuana and a substantial amount of cocaine. Examination of Robertson's phone records show thirty-eight long-distance phone calls made to Austin, Texas, and Jollyville, Texas, a suburb of Austin. Robertson was also convicted in Austin, Texas, of possession of marijuana on October 26, 1983.

The informant told Callas that when Robertson makes a trip to pick up the marijuana he drives his blue and white Chevy van. Investigation confirmed that among the five vehicles registered to Robertson is a blue and white 1988 Chevrolet van. Callas witnessed Robertson drive the van to the home of Doug James and Michelle Robertson. The informant stated that James took marijuana for dealing to his workplace in a blue and white igloo cooler. Police officers had observed James going to work, carrying the described blue and white cooler.

On May 14, 1991, the West Des Moines Police Department followed Robertson in the course of their investigation. They observed him driving a red Pontiac van around the Des Moines area for approximately two hours. Robertson then drove to the home of Marjorie Withers, the owner of the van. Officers observed Robertson unload several containers from the Pontiac van and load them into Robertson's blue and white Chevy van, which was parked at Withers' home. Robertson then entered the apartment complex and returned later with a white female. The two then drove the Chevy van south out of the state. The officers continued to follow Robertson and his companion through Missouri and into Kansas. The surveillance ended ten miles north of the Oklahoma state line. Robertson and his companion continued south.

Under the terms of Robertson's probation, he was required to receive permission from his probation officer before leaving the county of his residence. Robertson's probation officer had never given permission to leave the state to go to Kansas and had not given permission for the May 14 trip. A car belonging to Rachael Walters was seen at the Robertson home. The car was observed there both day and night for long periods of time; the officers surmised that Walters was Robertson's girlfriend. Walters lives with Marjorie Withers, owner of the Pontiac van observed on May 14, 1991. Police officers believed that Walters was the female companion who accompanied Robertson through Missouri and Kansas on that date. This information was all recorded in Officer Callas' affidavit to support his application for search warrants of the Robertson and Cornwell homes and vehicles. The search was conducted and evidence seized.

During the hearing on the motion to suppress evidence, the defendants argued that there were numerous factual errors included in the affidavit. First, a criminal history was taken for Doug James. The officers discovered that Victor Worley, an individual with the same birth date and social security number, had a prior criminal history. The officers believed that "Doug James" was an alias for Victor Worley. The warrant included information that Worley served a suspended sentence of two years probation for two counts of delivery of a schedule II controlled substance. At

the suppression hearing, defense counsel stated that Worley and James were actually two different people because Worley had previously stolen James' driver's license and had used that license as false identification.

Second, the defendants stated that Robertson's sister, Michelle Robertson, was not in fact a "convicted drug dealer" as reported in the affidavit, but rather received a deferred judgment on the charge which was subsequently dropped. Third, the defendants argued that Rachael Walters was not Robertson's girlfriend but was his babysitter. Finally, the defendants claimed that Marjorie Withers, not Rachael Walters, accompanied Robertson on the May 14, 1991 trip.

On the basis of these errors, the trial judge granted the defendants' motion to disclose the identity of the confidential informant. In his ruling on the record, the trial judge stated that he "did not disbelieve the officers," but felt that defendants should be permitted to test the veracity of the informant in order to meaningfully challenge the sufficiency of probable cause to support the search warrants. The court was concerned by the fact that the affiant Officer Callas, who testified at the suppression hearing, relied on information supplied by the informant to another officer who did not testify. This circumstance of a second-hand confidential informant, together with other inaccuracies in the affidavit, led the court to conclude that disclosure of the identity of the informant was necessary to test the merit of the motion to suppress. We granted discretionary review of this ruling by interlocutory appeal.

II. *Informer's privilege and the defendants' challenge to probable cause.*

■ This is an interlocutory appeal from a motion to suppress evidence based on an alleged lack of probable cause to issue search warrants. Because the challenge is on constitutional grounds, we review the case de novo. *State v. Todd,* 468 N.W.2d 462, 466 (Iowa 1991); *State v. Weir,* 414 N.W.2d 327, 329 (Iowa 1987). Doubtful or marginal questions regarding

whether an affidavit demonstrates the existence of probable cause are usually resolved by the preference to be accorded warrants. *Todd,* 468 N.W.2d at 466; *State v. Leto,* 305 N.W.2d 482, 485 (Iowa 1981).

■ The State is privileged to withhold the identity of a person who furnishes information relating to violations of the law. *Todd,* 468 N.W.2d at 467; *State v. Luter,* 346 N.W.2d 802, 810 (Iowa), *cert. denied,* 469 U.S. 830, 105 S.Ct. 116, 83 L.Ed.2d 59 (1984). This privilege is premised upon the public interest in maintaining the flow of information essential to law enforcement. *State v. Webb,* 309 N.W.2d 404, 410 (Iowa 1981); *State v. Lamar,* 210 N.W.2d 600, 602–03 (Iowa 1973). We have cited the compelling reasons for recognizing this privilege:

> A genuine privilege, on ... fundamental principle ... must be recognized for the identity of persons supplying the government with information concerning the commission of crimes. Communications of this kind ought to receive encouragement. They are discouraged if the informer's identity is disclosed. Whether an informer is motivated by good citizenship, promise of leniency or prospect of pecuniary reward, he will usually condition his cooperation on an assurance of anonymity—to protect himself and his family from harm, to preclude adverse social reactions and to avoid the risk of defamation or malicious prosecution actions against him. The government also has an interest in nondisclosure of the identity of its informers. Law enforcement officers often depend upon professional informers to furnish them with a flow of information about criminal activities. Revelation of the dual role played by such persons ends their usefulness to the government and discourages others from entering into a like relationship. That the government has this privilege is well established, and its soundness cannot be questioned.

8 J. Wigmore, *Evidence* § 2374, at 761–62 (1961); *see Luter,* 346 N.W.2d at 810; *State v. Nelson,* 395 N.W.2d 649, 652 (Iowa App.1986).

To be weighed against the informer's privilege, however, is the defendant's right to prepare and present a meaningful defense. *State v. Byrd*, 448 N.W.2d 29, 31 (Iowa 1989); *State v. Kantaris*, 280 N.W.2d 389, 391 (Iowa 1979). The defendant bears the burden of showing the necessity for disclosure of the informant's identity. *Todd*, 468 N.W.2d at 467. In those cases in which the defendant requests disclosure of the informant's identity, we balance the State's interest in the privilege against the defendant's need for the informant's identity. *Id.; Webb*, 309 N.W.2d at 410. When a defendant requests disclosure at trial, the defendant's need is weighed against the State's privilege, in light of the facts and circumstances peculiar to each case, considering (1) the nature of the offense charged, (2) defenses raised, and (3) potential significance of an informer's testimony. *Id.; Lamar*, 210 N.W.2d at 602–03.

Paramount among the considerations in determining whether disclosure is required to ensure a fair trial is whether the informant was a witness or participant in the crime for which the defendant is charged. *Kantaris*, 280 N.W.2d at 391. Generally, the identity of an informant must be disclosed when the informant participated in or witnessed the crime charged. *Id.; Lamar*, 210 N.W.2d at 603. But even if the informant is a witness or participant, mere speculation that the informant may be helpful in preparing the defendant's defense is not enough to overcome the public interest in protection of the informant. *State v. Sheffey*, 243 N.W.2d 555, 559 (Iowa 1976).

With the backdrop of these controlling principles, we first note that this problem arises in two contexts; disclosure *at trial* of the informant's identity, and disclosure at the *pretrial hearing* on the motion to suppress the evidence obtained under the search warrants. *Luter*, 346 N.W.2d at 809.

In *Luter*, we stated that there is a significant distinction between participation in the events giving rise to the current criminal charges and, on the other hand, partic- ipation in actions that constitute incidents recited in the informations provided for search warrants. *Id.* at 810. In *McCray v. Illinois*, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62, *reh'g denied*, 386 U.S. 1042, 87 S.Ct. 1474, 18 L.Ed.2d 616 (1967), the United States Supreme Court established this distinction when it ruled on whether the prosecution must disclose the identity of a confidential informant who supplied information to establish probable cause for a warrantless search. The Court stated:

> We must remember also that we are not dealing with the trial of the criminal charge itself. There the need for a truthful verdict outweighs society's need for the informer privilege. Here, however, the accused seeks to avoid the truth. The very purpose of a motion to suppress is to escape the inculpatory thrust of evidence in hand, not because its probative force is diluted in the least by the mode of seizure, but rather as a sanction to compel enforcement officers to respect the constitutional security of all of us under the Fourth Amendment.

*Id.* 386 U.S. at 307, 87 S.Ct. at 1060, 18 L.Ed.2d at 68 (quoting *State v. Burnett*, 42 N.J. 377, 386, 201 A.2d 39, 44 (1964)). The Court goes on to state:

> [T]he Fourth Amendment is served if a judicial mind passes upon the existence of probable cause. Where the issue is submitted upon an application for a warrant, the magistrate is trusted to evaluate the credibility of the affiant in an ex parte proceeding.

*Id.*

When the question of an informant's credibility arises in a motion to suppress evidence obtained from a search pursuant to a warrant, and a judicial officer has passed on veracity and probable cause, the defendant's interests in disclosure are less compelling. Therefore, in the context of a motion to suppress evidence seized pursuant to a warrant, the burden upon the defendant to establish that disclosure is needed to ensure a fair hearing on the probable cause issue is even greater than when a motion for disclosure is made at trial or at a suppression hearing for evi-

dence obtained from a warrantless seizure. We find that the defendants have failed to meet their burden for the following reasons.

First, the magistrate who issued the search warrant stated her finding that the informant was reliable because the informant had provided reliable information in the past and because the informant's information had been partially corroborated with subsequent police investigation. These findings if supported by proper evidence are sufficient to support the validity of the magistrate's decision to find probable cause based on the informant's information. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548, *reh'g denied,* 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983); *Luter,* 346 N.W.2d at 807. Second, we see no basis in the record from the suppression hearing to indicate that the information given by the informant has proven untrue. In fact, the information given by the informant that was used in the affidavit to support probable cause was either corroborated with subsequent police investigation before the search warrant was granted or was consistent with the evidence actually seized pursuant to the warrant. Finally, all of the errors in the warrant alleged by the defendants are errors at least facially committed by the swearing officer. The defendants did not controvert any of the informant's information during the suppression hearing.

We find no basis to question the informant's veracity. The result of disclosure would be a "fishing expedition" by the defendants for information that may be helpful in the preparation of their defense, a result that we have repeatedly declined to permit. *Todd,* 468 N.W.2d at 467; *Webb,* 309 N.W.2d at 410; *State v. Howell,* 290 N.W.2d 355, 359 (Iowa 1980). Second, if disclosure is granted, we run the risk that the State cannot afford to reveal its source and must therefore suppress evidence that was otherwise constitutionally seized.

III. *Informer's privilege and police perjury.*

Despite the trial court's ruling that the court believed the officers and questioned the reliability of the informant, on appeal the defendants strenuously argue that this is a case to check the truthfulness of the officer and affiant in an application for a search warrant in which the information given is supplied primarily by a confidential informant. Defendants contend that to determine whether the informant actually exists or whether the information given was untruthfully reported can only be meaningfully shown with the informant's actual testimony at the suppression hearing. While we agree that the informant's identity may be disclosed when information from the informant is necessary to confirm police perjury, some quantum of evidence of possible police perjury must be shown before disclosure can be required. In this case, we find the defendants have failed to present any evidence of police perjury.

The United States Supreme Court articulated the standard by which an affidavit supporting probable cause and issuance of a search warrant may be challenged for veracity. The Court stated:

[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667, 672 (1978). Mere allegations of deliberate

falsehood or of reckless disregard for the truth are insufficient to mandate an evidentiary hearing; they must be accompanied by an offer of proof. *Id.* at 171, 98 S.Ct. at 2684, 57 L.Ed.2d at 682. Claims of negligent or innocent mistakes are insufficient. *Id.*

The defendants believe they are entitled to pursue a *Franks* hearing to determine the veracity of the information supplied by Officer Callas in his affidavit. Their argument is that the only meaningful way to "establish a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" is to question the confidential informant.

The Supreme Court's decision in *McCray* has been criticized for its failure to provide a standard that protects against police perjury. Under *McCray*, it has been argued that to obtain a search warrant a police officer need only say that an unnamed "reliable informant" told him that the defendant was committing a crime. *See* 1 W. LaFave, *Search and Seizure* § 3.3(g), at 702–07 (2d ed. 1987). When the affiant's information comes largely from a confidential informant, testimony from that informant would be a sure way to determine whether the affiant intentionally, knowingly or recklessly misstated the truth in the affidavit. But if the court grants a defendant's request for disclosure of an informant's identity any time a defendant wished to challenge the veracity of the affiant, the informer's privilege would be rendered illusory, and would be nothing more than mandatory disclosure.

> If a defendant may insist upon disclosure of the informant in order to test the truth of the officer's statement that there is an informant or as to what the informant related or as to the informant's reliability, we can be sure that every defendant will demand disclosure.... And since there is no way to test the good faith of a defendant who presses the demand, we must assume the routine demand would have to be routinely granted.

*McCray,* 386 U.S. at 306, 87 S.Ct. at 1060, 18 L.Ed.2d at 68.

We recognize that it is hard for the defendants to discover evidence tending to prove that police perjury has occurred. Proving the nonexistence of an individual whose identity is unknown to the defendant is a difficult task. Establishing that the unknown informant inaccurately described the defendant's activities could be equally difficult. Courts that have considered this question generally require some preliminary showing of falsity of the officer's statements in the affidavit before disclosure will be required to establish the elements necessary to obtain a *Franks* hearing. *United States v. Schauble,* 647 F.2d 113, 117 (10th Cir.1981); *State v. Moore,* 438 N.W.2d 101, 106 (Minn.1989); *State v. Butler,* 207 Neb. 760, 765, 301 N.W.2d 332, 335 (1981).

We have previously noted that we have considerable hesitancy to accept this perjury argument. *Luter,* 346 N.W.2d at 811. In this case, the defendants have failed to show any misstatements in the affidavit that would indicate a perjured affidavit. First, we note that the errors alleged by the defendants were only posed by the defendants' counsel during cross-examination at the suppression hearing; no direct evidence of the allegedly incorrect information was given. But even if we accept as true the defendants' claim that false statements were made, these appear to be honest mistakes, or errors negligently made at most. We cannot expect complete accuracy in preliminary police investigations, and honest mistakes that do not provide the basis for probable cause will not defeat an otherwise valid search warrant.

The allegedly false statements show neither a reckless disregard for the truth by the affiant nor that they were made knowingly and intentionally. Whether Rachael Walters was defendant Richard Robertson's girlfriend, as alleged, or babysitter, as defendants state, or both, is of small consequence. The statement that Michelle Robertson was a convicted drug dealer rather than a deferred judgment recipient on the charge makes no change in the

message conveyed that she had participated in illegal drug activity. The affiant's statement that Rachael Walters rather than Marjorie Withers accompanied Robertson on May 14, 1991, on a trip through Missouri and Kansas added no information that better supported the basis for the warrant than if the right woman companion had been named. The only alleged error of any significance is the assumption in the affidavit that Doug James and Victor Worley were the same person. The officers cited in support of the warrant application that Worley was a convicted drug dealer. Applying this conviction to Doug James, defendants argue, was an untruth of large consequence and requires testing by disclosure and examination of the informant.

We do not view this error, if in fact so, to be of material proportion. The assumption by the officers that "Doug James" was an alias is understandable, given that both names carried the same social security number. Even when combined with the other alleged errors of fact made by the affiant, we believe the showing required of defendants to support disclosure of the informant's identity falls far short of what is legally necessary. Nor does the fact that the affiant obtained some information from an officer who did not testify at the suppression hearing provide enough support to alter our result.

Having found the purported errors in the affidavit inconsequential, we are not convinced that this case warrants the *in camera* examination of the informant that the defendants suggest. While an *in camera* examination by the trial judge may be ordered in those rare cases in which the defendant makes a substantial preliminary showing that police misconduct or perjury has probably occurred, no such showing has been made by the defendants here.

We conclude that the defendants have failed to establish need for disclosure of the informant's identity, either to challenge the reliability of the informant or the veracity of the swearing officer.

REVERSED.