**STATE of Iowa, Appellee,**

v.

**Walter Junior HOSKINS, III, Appellant.**

**No. 04–1698.**

Supreme Court of Iowa.

March 31, 2006.

---

Linda Del Gallo, State Appellate Defender, and Robert P. Ranschau, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Richard J. Bennett, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Brad Walz, Assistant County Attorney, for appellee.

WIGGINS, Justice.

In this appeal, the State seeks further review of a court of appeals decision suppressing evidence found in a warrantless search of the defendant's vehicle. Because probable cause and exigent circumstances supported the search, we vacate the decision of the court of appeals. As a consequence of vacating the court of appeals' decision, we must also decide if the defendant's trial counsel was ineffective for failing to move for disclosure of the identity of the confidential informant and for failing to raise a specific sufficiency-of-the-evidence claim during the defendant's motion for judgment of acquittal. On our review, we find the defendant's trial counsel was not ineffective. Therefore, we affirm the judgment of the district court.

## I. Background Facts and Proceedings.

During the early morning hours of September 5, 2003, a confidential informant visited the Waterloo police station and relayed information to patrol sergeant Mark Meyer. The informant reported Walter Junior Hoskins, III was at a bar located two blocks from the station with crack cocaine on his person for sale. Meyer stated the informant had seen Hoskins with the drugs but Meyer did not know whether Hoskins had the drugs out looking at them or whether he was making a sale. The informant described the vehicle Hoskins was driving and said Hoskins parked it in front of the bar.

Within twenty to thirty minutes of receiving the informant's information, Meyer dispatched other police officers to the bar. The officers returned to the station and corroborated part of the informant's information, that the vehicle being driven by Hoskins was parked in front of the bar where the informant said it would be, but did not corroborate that Hoskins had

drugs on his person. After reporting to Meyer, one of the officers, Greg Erie, drove to a parking ramp overlooking the bar. When he arrived at the top of the ramp, he observed the vehicle leaving the bar. Erie immediately notified other officers as to the direction the vehicle was headed.

Officer Michael Rasmussen's police car caught up to Hoskins' vehicle just as it drove through a red light. Rasmussen stopped the vehicle and informed the driver he stopped the vehicle for running a red light. There were two people in the vehicle, a driver, Hoskins, and a front passenger, Rodney Dejuan Berry. Rasmussen asked Hoskins for his license, registration, and insurance information. Upon receiving this documentation, Rasmussen returned to his car and called the dispatcher asking for backup and a canine unit.

Rasmussen returned to Hoskins' vehicle and asked him to exit it. Backup officers arrived at the stop. Hoskins consented to a search of his person and no contraband was found on his person. While the other officers were present, Rasmussen searched Berry and found no contraband on his person. Rasmussen then asked Hoskins if he could search the vehicle. Hoskins refused to consent to a search of his vehicle. Rasmussen then informed Hoskins he had requested a canine unit to come to the scene so the drug dog could sniff the vehicle. He told Hoskins if the drug dog indicated the vehicle contained narcotics, he would search the vehicle. Rasmussen was then notified that the canine unit was tied up with another stop. At this point, Meyer told Rasmussen they had probable cause to search the vehicle.

Rasmussen searched the vehicle and found a white towel beneath the driver's seat, which contained two plastic bags, one containing nine smaller bags of crack cocaine (0.96 grams) and the other containing ten smaller bags of powder cocaine (3.18 grams). The canine unit eventually arrived and the rest of the vehicle was searched but nothing more was found. The police arrested Hoskins and brought him to the station. Hoskins received his *Miranda* warnings and he told Meyer he wanted to be charged with simple possession. Hoskins acknowledged the substances found in the vehicle were his but did not acknowledge he was using cocaine. Hoskins also said there was not anything going on that he did not know about as to the drug trade.

The State charged Hoskins with two drug crimes: (1) possession of cocaine base with the intent to deliver in violation of Iowa Code section 124.401(1)(c) (2003), and being a second offender and an habitual offender under Iowa Code sections 124.411, 902.8, and 902.9; and (2) possession of salt of cocaine with the intent to deliver in violation of Iowa Code section 124.401(1)(c), and being a second offender and an habitual offender under Iowa Code sections 124.411, 902.8, and 902.9.

Hoskins filed a motion to suppress challenging the legality of the stop and search of his vehicle. Hoskins claimed the police stopped his vehicle without reasonable suspicion, the police did not have a warrant to search the vehicle, and there was no probable cause to search the vehicle. The district court denied Hoskins' motion to suppress. The court concluded probable cause supported the search of the vehicle in view of Meyer's experience and the reliable informant's tip.

The case proceeded to a jury trial. At trial, Hoskins' trial counsel moved for a judgment of acquittal stating "specifically we do not believe that the State has presented evidence which given in the light most helpful to the State would be adequate to find [Hoskins] guilty of possession with intent to deliver either crack cocaine

or powdered cocaine." The State resisted the motion and the court overruled it.

The jury found Hoskins guilty of both crimes. The court entered judgment and sentenced Hoskins to terms of incarceration not to exceed thirty years on each conviction, to be served concurrently.

Hoskins appealed. We transferred the case to our court of appeals. The court of appeals reversed the district court's ruling on the motion to suppress. We granted further review. We will discuss other facts bearing on Hoskins' contentions on appeal in our analysis of the legal issues presented.

## II. Issues.

Hoskins raises two issues on appeal. First, he asserts the district court erred in overruling his motion to suppress. Second, Hoskins claims his trial counsel provided ineffective assistance of counsel in failing to move for disclosure of the identity of the confidential informant and in failing to raise a specific sufficiency-of-the-evidence claim during the motion for judgment of acquittal.

## III. Scope of Review.

The State requested further review claiming the court of appeals erred in suppressing the drugs found in this case under the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution. Our review is de novo when we assess an alleged violation of constitutional rights. *State v. Freeman*, 705 N.W.2d 293, 297 (Iowa 2005). We are required to review the record and independently evaluate the totality of the circumstances. *State v. Turner*, 630 N.W.2d 601, 606 (Iowa 2001). We are not bound by the fact findings of the district court, but we do give deference to those findings because the district court

had the opportunity to evaluate the credibility of the witnesses. *Id.*

Hoskins' claims involving ineffective assistance of counsel have their basis in the Sixth Amendment to the United States Constitution and are reviewed de novo. *State v. Wills*, 696 N.W.2d 20, 22 (Iowa 2005). Although these claims are typically preserved for postconviction relief actions, "we will address such claims on direct appeal when the record is sufficient to permit a ruling." *Id.*

## IV. Analysis.

*A. Motion to Suppress.* Our federal and state constitutions protect people from unreasonable searches and seizures. U.S. Const. amend. IV; Iowa Const. art. I, § 8; *State v. Cline*, 617 N.W.2d 277, 281 (Iowa 2000), *abrogated on other grounds by Turner*, 630 N.W.2d at 606 n. 2. Cases interpreting the federal constitution are persuasive in our interpretation of the state constitution because the federal and state search-and-seizure clauses are similar. *See State v. Olsen*, 293 N.W.2d 216, 219–20 (Iowa 1980). Decisions interpreting the federal constitution, however, are not binding on us with respect to the Iowa Constitution. *Id.* Because Hoskins has not given us reason to do otherwise, and the facts of this case do not give us a basis to distinguish the protections of our state constitution from those of the federal constitution, our discussion of the merits of Hoskins' suppression motion applies equally to his state and federal constitutional claims. *State v. Reinders*, 690 N.W.2d 78, 82 (Iowa 2004); *State v. Lewis*, 675 N.W.2d 516, 522–23 (Iowa 2004).

The Fourth Amendment to the United States Constitution assures "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and sei-

zures." U.S. Const. amend. IV. The Fourth Amendment is binding on the states through the Fourteenth Amendment of the federal constitution. *Freeman*, 705 N.W.2d at 297. "Warrantless searches and seizures are per se unreasonable, unless one of the few carefully drawn exceptions to the warrant requirement exists." *Id.* The recognized exceptions include "searches based on consent, plain view, probable cause coupled with exigent circumstances, searches incident to arrest, and those based on the emergency aid exception." *Lewis*, 675 N.W.2d at 522. The State must prove by a preponderance of the evidence that a recognized exception to the warrant requirement applies. *State v. Cadotte*, 542 N.W.2d 834, 836 (Iowa 1996), *abrogated on other grounds by Turner*, 630 N.W.2d at 606 n. 2. The assessment of a police officer's conduct is based on an objective standard. *Freeman*, 705 N.W.2d at 297. A search's legality does not depend on the actual motivations of the police officers involved in the search. *Id.*

■ The State claims the exception to the warrant requirement applicable to this case is probable cause coupled with exigent circumstances. Exigent circumstances exist when a vehicle is mobile and its contents may not be found again if a warrant is required. *State v. Carter*, 696 N.W.2d 31, 37 (Iowa 2005). At the suppression hearing, Hoskins' trial counsel conceded exigent circumstances existed at the time the officers searched Hoskins' vehicle due to the mobility of the vehicle.

■ Additionally, it is well-settled law that a traffic violation, no matter how minor, gives a police officer probable cause to stop the motorist. *State v. Aderholdt*, 545 N.W.2d 559, 563 (Iowa 1996). An officer observed Hoskins' vehicle drive through a red light in violation of Iowa's traffic laws. Consequently, the officer clearly acted within his authority in stopping Hoskins'

vehicle. Therefore, we will focus on whether the police had probable cause to search the vehicle after it was lawfully stopped.

■ Probable cause exists to search a vehicle

"when the facts and circumstances would lead a reasonably prudent person to believe that the vehicle contains contraband. The facts and circumstances upon which a finding of probable cause is based include 'the sum total ... and the synthesis of what the police [officer has] heard, what [the officer] knows, and what [the officer] observe[s] as [a] trained officer[ ].' "

*State v. Gillespie*, 619 N.W.2d 345, 351 (Iowa 2000) (omission in original) (alterations in original) (citations omitted), *abrogated on other grounds by Turner*, 630 N.W.2d at 606 n. 2. The assessment of probable cause " 'is based on probabilities and not mere suspicion,' " but it need not "rise to the level of certainty beyond a reasonable doubt." *Carter*, 696 N.W.2d at 37 (citation omitted). The probable cause needed by the officers to search the vehicle in this case must be based on facts that would justify a magistrate to issue a warrant, even though the officers had not actually obtained a warrant. *United States v. Ross*, 456 U.S. 798, 809, 102 S.Ct. 2157, 2164–65, 72 L.Ed.2d 572, 583–84 (1982). A probable cause finding rests on a nexus between the criminal activity, the place to be searched, and the items to be seized. *State v. Davis*, 679 N.W.2d 651, 656 (Iowa 2004).

The State claims the officers had probable cause to search Hoskins' vehicle when Meyer authorized the search. Consequently, we must determine whether the totality of the circumstances available to Meyer at the time he authorized the search would be enough to establish proba-

ble cause for the issuance of a warrant to search the vehicle. *See Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983) (holding the totality-of-the-circumstances standard is used in determining whether probable cause has been established for the issuance of a search warrant).

At the time Meyer authorized the search, an informant had informed him Hoskins had drugs in his possession at the bar and Hoskins' vehicle was parked outside of the bar. Meyer knew this informant for fifteen to twenty years. Meyer testified this informant is a mature individual. Meyer also testified the information provided by this informant in the past led to the courts issuing several search warrants and the police department making numerous arrests. Meyer further testified this informant had never given false information in the past, had supplied information in the past well over fifty times, and past information from this informant led to the discovery of drugs and other contraband. Meyer also confirmed the department pays this informant if the information proves helpful to the police.

Meyer corroborated the information given to him by the informant concerning the location of Hoskins' vehicle by sending officers to the bar. In addition to the information provided by the informant, Meyer was familiar with Hoskins, his prior convictions for possession of drugs with intent to deliver, and the vehicle he was using.

When determining whether probable cause exists to issue a search warrant, the Supreme Court stated:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair

probability that contraband or evidence of a crime will be found in a particular place.

*Id.* at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548.

In this case, a reliable informant with a favorable track record of providing information to the authorities provided Meyer with the informant's firsthand observation of Hoskins at the bar with drugs in his possession. *See State v. Gogg,* 561 N.W.2d 360, 365 (Iowa 1997) (finding a confidential informant was credible for the issuance of a search warrant where the information "revealed the informant had supplied information on several prior occasions and had never been shown to have provided false information," and the information "was not public knowledge and the informant personally saw [the defendants] in possession of [drugs]"). Additionally, Meyer corroborated the information provided by the informant when he sent officers to confirm Hoskins' vehicle was parked outside the bar. *See State v. Weir,* 414 N.W.2d 327, 332 (Iowa 1987) (explaining courts making informant credibility determinations for the issuance of a search warrant rely on various factors, one of which is the corroboration of the informant's information). Finally, Meyer was aware of Hoskins' prior drug convictions. *See State v. Padavich,* 536 N.W.2d 743, 748 (Iowa 1995) (recognizing in making a determination of probable cause for the issuance of a search warrant, several factors may be considered, such as "a suspect's history of involvement in the drug trade"). These facts are sufficient to establish a fair probability that illegal drugs would be found in Hoskins' possession.

Even so, Hoskins argues and the court of appeals agreed the information provided by the informant did not establish a nexus between the items the police seized—the

drugs—and the place the police searched—the vehicle. We disagree.

The ninth circuit was confronted with a similar situation where an affidavit in support of a search warrant application stated an informant had purchased drugs at the defendant's apartment, but provided no information drugs were ever seen in the defendant's vehicle. *United States v. Spearman*, 532 F.2d 132, 133 (9th Cir. 1976). There the affidavit included a statement from a police officer stating, "It is commonplace for dealers of heroin to have heroin that is packaged for sale in the place where they live or sell from, in their vehicles or on their persons." In reaching the conclusion probable cause existed to issue a search warrant to search the defendant's vehicle, the court pointed out it had upheld many searches where

> "the nexus between the items to be seized and the place to be searched rested not on direct observation ... but on the type of crime, the nature of the [items to be seized], the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely to hide [the items to be seized]."

*Id.* (omission in original) (citations omitted). The court found even though the informant's direct observation only connected the drugs with the defendant's apartment, the magistrate was required to interpret the affidavit in a common-sense fashion. *Id.* Therefore, "the magistrate was justified in inferring probable cause that [the defendant] would also have heroin concealed in his automobile." *Id.*

We have adopted this reasoning in an analogous situation. *State v. Groff*, 323 N.W.2d 204, 212 (Iowa 1982). In *Groff*, the affidavit disclosed the defendants' field contained a large quantity of marijuana plants in various stages of growth. *Id.* The affidavit also included a statement from a state narcotics agent that in his experience as a narcotics investigator, individuals who manufacture or distribute marijuana need "an area to refine, manicure and store said substances during various stages of drying prior to use and distribution." *Id.* Based on this affidavit, we affirmed the magistrate's issuance of a search warrant allowing officers to search the defendants' residence. *Id.* In doing so, we reaffirmed the principle that there must be a nexus between the place to be searched and the items to be seized. *Id.* We also confirmed the notion that direct observation is not required to establish this nexus, as it "can be found by considering the type of crime, the nature of the items involved, the extent of the defendant's opportunity for concealment, and the normal inferences as to where the defendant would be likely to conceal the items." *Id.*; *see also State v. Leto*, 305 N.W.2d 482, 486 (Iowa 1981) (holding it was reasonable for a magistrate to infer that a suspect in an automobile theft operation would keep items relating to stolen vehicles at a repair shop located at his residence); *State v. Iowa Dist. Ct.*, 247 N.W.2d 241, 248 (Iowa 1976) (holding it was reasonable for a magistrate to infer from circumstances including the presence of stolen property in a truck that the remainder of the stolen property would be found at the occupants' residence).

At the suppression hearing, Meyer testified most drug dealers take their drugs with them when they leave a bar, rather than leaving the drugs behind. Rasmussen testified in his experience with narcotics stops people hide their drugs in their vehicles to avoid detection by the authorities. It is reasonable to infer from the knowledge of the officers at the time of the search that a suspect who has drugs in a bar would take them with him when he left the bar and hide them in his vehicle in

order to avoid detection on his person if stopped by the police. Thus, the officers' testimony established the nexus between the place to be searched—the vehicle—and the items to be seized—the drugs—because it is reasonable to infer from their testimony that they would probably find the drugs seen by the informant at the bar in Hoskins' vehicle.

If a magistrate was presented with an affidavit in support of an application for a search warrant containing all the information Meyer had available to him when he authorized the search of Hoskins' vehicle, the magistrate should have found there was probable cause to issue a warrant to search Hoskins' vehicle. Furthermore, if Hoskins appealed the magistrate's decision to issue the warrant, we have no doubt we would affirm that decision. Accordingly, under the totality of the circumstances, the officers had probable cause to search Hoskins' vehicle. The presence of probable cause coupled with the exigent circumstances created by the mobility of the vehicle relieved the officers of the obligation to obtain a warrant before executing the search.

■ *B. Ineffective–Assistance–of–Counsel Claims.* Hoskins claims his trial counsel failed to provide effective assistance of counsel by not moving for disclosure of the identity of the confidential informant or raising a specific sufficiency-of-the-evidence claim during the motion for judgment of acquittal. "In order for a defendant to succeed on a claim of ineffective assistance of counsel, the defendant must prove: (1) counsel failed to perform an essential duty and (2) prejudice resulted." *Wills,* 696 N.W.2d at 22; *see also Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). In order to satisfy the first element, " 'counsel's performance is measured against the standard of a reasonably

competent practitioner with the presumption that the attorney performed his duties in a competent manner.' " *State v. Doggett,* 687 N.W.2d 97, 100 (Iowa 2004) (citations omitted). Prejudice exists where " 'there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different.' " *Wills,* 696 N.W.2d at 22 (citations omitted).

■ In regards to Hoskins' first ineffective-assistance-of-counsel argument, that his trial counsel failed to move for disclosure of the identity of the confidential informant, the analysis begins with the principle that the State can withhold the identity of an informant to maintain the information flow essential to law enforcement. *State v. Robertson,* 494 N.W.2d 718, 722 (Iowa 1993). However, this principle is not an absolute because "the defendant's right to prepare and present a meaningful defense" is weighed against it. *Id.* at 723; *see also State v. Denato,* 173 N.W.2d 576, 578 (Iowa 1970) (stating the balancing test for disclosure " 'depend[s] on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors' " (citation omitted) (emphasis omitted)).

We have noted a distinction in applying these principles when a defendant seeks disclosure of an informant's identity at a pretrial hearing on a motion to suppress, rather than at a trial on the criminal charges. *State v. Luter,* 346 N.W.2d 802, 809–11 (Iowa 1984). The Supreme Court recognized this distinction when it stated:

"We must remember also that we are not dealing with the trial of the criminal charge itself. There the need for a truthful verdict outweighs society's need for the informer privilege. Here, however, the accused seeks to avoid the

truth. The very purpose of a motion to suppress is to escape the inculpatory thrust of evidence in hand, not because its probative force is diluted in the least by the mode of seizure, but rather as a sanction to compel enforcement officers to respect the constitutional security of all of us under the Fourth Amendment." *McCray v. Illinois*, 386 U.S. 300, 307, 87 S.Ct. 1056, 1060, 18 L.Ed.2d 62, 68 (1967) (citation omitted).

■ It is the defendant's burden to demonstrate the necessity of disclosure of the identity of an informant. *Robertson*, 494 N.W.2d at 723. Normally, when a magistrate is requested to issue a search warrant, the magistrate reviews the affidavit in support of the application, determines the veracity of any informants, and decides whether probable cause exists to issue the warrant. Thus, in the context of a motion to suppress evidence found in a search conducted pursuant to a warrant, there is a much greater burden on the defendant to compel disclosure after the magistrate has passed on the veracity of the informant than a suppression hearing based on a warrantless search and seizure. *Id.* at 723–24. Nonetheless, the defendant still has the burden to show the need for disclosure of the informant's identity, even though the suppression hearing involved a warrantless search.

Hoskins contends the disclosure of the identity of the informant was necessary to ensure a fair hearing on the probable cause issue. Given the record made in this case, Hoskins' mere allegations that the informant's identity would help ensure a fair hearing on the probable cause issue does not sustain his burden to overcome the principle that the State can withhold the identity of an informant to maintain the information flow essential to law enforcement. The district court had sufficient information to evaluate the reliability of the informant based on the informant's past performance. Additionally, Hoskins has failed to point out any discrepancies between the information provided by the informant and the facts. Hoskins does not dispute he was in the bar at the time the informant said he was in the bar, nor does he dispute his vehicle was parked at the bar where the informant said it was parked. Finally, the informant's information that Hoskins had crack cocaine in his possession was consistent with the drugs found during the search of Hoskins' vehicle. The disclosure of the identity of the informant under these circumstances would amount to nothing more than a fishing expedition by Hoskins for information that *might* help ensure a fair hearing on the probable cause issue. We have repeatedly declined to authorize such expeditions. *Id.* at 724.

Thus, Hoskins has failed to establish a legal basis that would have required the district court to disclose the identity of the informant. Consequently, Hoskins' ineffective-assistance-of-counsel claim fails on this issue. *See Wills*, 696 N.W.2d at 24 (holding trial counsel was not ineffective for failing to raise issues that have no merit).

■ Hoskins also claims his trial counsel was ineffective for failing to raise a specific sufficiency-of-the-evidence claim during the motion for judgment of acquittal. Hoskins contends there was insufficient evidence for a jury to find he possessed the drugs with the intent to deliver. When reviewing a claim based on the sufficiency of the evidence, "we view the evidence in the light most favorable to the State." *State v. Greene*, 592 N.W.2d 24, 29 (Iowa 1999). The verdict must be supported by substantial evidence. *State v. Robinson*, 288 N.W.2d 337, 338–40 (Iowa 1980). If a rational trier of fact could be convinced the defendant is guilty of the

charge beyond a reasonable doubt, the evidence is substantial. *Greene*, 592 N.W.2d at 29. Therefore, we must determine whether a rational jury could have found Hoskins was in possession of cocaine base and salt of cocaine with the intent to deliver beyond a reasonable doubt.

Turning to the evidence in this case, we are convinced that a rational jury could have found Hoskins had the intent to deliver the drugs based on several facts presented at trial. These facts include Hoskins' statements to Meyer the drugs were his, he was not using cocaine, and there was not anything going on that he did not know about as to the drug trade. Additionally, we find support for our conclusion in Meyer's testimony that the quantity of drugs, the packaging, and money found on Hoskins were consistent with a person dealing in drugs. *See State v. Adams*, 554 N.W.2d 686, 692 (Iowa 1996) (stating proof of intent to deliver drugs "usually consists of circumstantial evidence and the inferences that can be drawn from that evidence" and such intent may be inferred from the packaging of the drugs, large amounts of unexplained cash, and the quantity of drugs).

Accordingly, Hoskins has failed to establish his trial counsel would have succeeded in raising a specific sufficiency-of-the-evidence claim during the motion for judgment of acquittal. Consequently, Hoskins' ineffective-assistance-of-counsel claim fails on this issue as well. *See Wills*, 696 N.W.2d at 24 (holding trial counsel was not ineffective for failing to raise issues that have no merit).

## V. Disposition.

Because probable cause and exigent circumstances supported the warrantless search of Hoskins' vehicle and his trial counsel was not ineffective, we vacate the decision of the court of appeals and affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**