# IN THE COURT OF APPEALS OF IOWA

No. 13-0500
Filed June 25, 2014

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**JASON WARD CAGLEY,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Floyd County, Stephen P. Carroll (motion to suppress), Colleen D. Weiland (bench trial), and DeDra L. Schroeder (sentencing), Judges.

A defendant challenges the district court's denial of his motion to suppress. **AFFIRMED.**

David A. Kuehner of Eggert, Erb, Mulcahy & Kuehner, P.L.L.C., Charles City, for appellant.

Thomas J. Miller, Attorney General, Bridget A. Chambers, Assistant Attorney General, and Norman Klemesrud, County Attorney, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Bower, JJ.

**TABOR, J.**

Jason Cagley appeals his conviction for manufacturing methamphetamine, a class "C" felony, in violation of Iowa Code sections 124.401(1)(c)(6) and 124.206(4)(b) (2011). Cagley argues the district court erred in denying his motion to suppress evidence of manufacturing discovered in a gym bag he left in his mother's car. Because Cagley had no reasonable expectation of privacy in the car and was not entitled to exclude the incriminating evidence under the fruits-of-the-poisonous-tree doctrine, we affirm.

## I.   Background Facts and Proceedings

In the late night of March 1 and early morning of March 2, 2011, a burglary occurred at the Cedar Valley Auction Company in Charles City. The burglar stole a large number of collectable coins. On March 2, Cagley brought a bag of old coins to First Security Bank. A teller agreed to buy the coins for seventy-five dollars. A bank representative then contacted the Charles City Police Department. Officer Todd Smith determined the coins Cagley brought to the bank were the same coins stolen from the auction company. The bank's surveillance video showed Cagley bringing in the coins and showed the car transporting him to the bank.

On March 3, 2011, police obtained a search warrant for the items stolen in the burglary. The warrant allowed officers to search the person of Jason Cagley, a house owned by Karla Cagley, and two cars registered to her. The warrant did not identify Karla's relationship to Jason.

Just as the magistrate was approving the search warrant, Officer David Diercks received a called from the bank advising him Cagley was back to sell more coins. Diercks rushed to the bank, stepped outside with Cagley, and read his *Miranda* rights. Another officer arrived with the warrant and presented it to Cagley, telling him the officers were going to search the car. Waiting inside the car were Cagley's brother, who was in the driver's seat, and Cagley's girlfriend. Before the officers started searching, Cagley confessed the car contained a methamphetamine lab. The officers found containers of methamphetamine "sludge"[1] inside a gym bag in the car. The officers then arrested Cagley.

On December 16, 2011, the State charged Cagley with manufacturing methamphetamine within 1000 feet of a public park, a class "B" felony, in violation of Iowa Code sections 124.401(1)(b)(7) and 124.206(4)(b). Cagley filed a motion to suppress any evidence found as a result of the search. The district court held a suppression hearing on February 13, 2012, and denied the motion on February 22, 2012. On June 29, 2012, the parties entered an agreement where the State would amend the charge from a class "B" felony to a class "C" felony, and Cagley would waive his right to a jury trial and stipulate to the minutes of testimony. The court found Cagley guilty on October 8, 2012. On May 25, 2013, the court sentenced Cagley to a term of imprisonment not to exceed ten years.

Cagley now appeals, challenging only the search.

---

[1] "Sludge" is a byproduct of methamphetamine production.

## II.    Standard of Review

If a ruling on a motion to suppress is based on constitutional issues, our review is de novo.  *State v. Kooima*, 833 N.W.2d 202, 205 (Iowa 2013).  This review requires us to make an independent evaluation of the totality of the circumstances as shown by the entire record, including the evidence presented at the suppression hearing.  *State v. Lane*, 726 N.W.2d 371, 377 (Iowa 2007).

## III.    Analysis

Cagley challenges the search on two grounds.[2]   First, he argues the search warrant was invalid because law enforcement did not establish a sufficient nexus between the crime being investigated and the search of his mother's car.  Second, he claims a legitimate expectation of privacy in the gym bag he left in the car.

### A.  No legitimate expectation of privacy to challenge search warrant

We turn first to Cagley's attack on the search warrant as lacking a nexus between the burglary he allegedly committed and "a house where he does not live and two cars he does not own."  The district did not reach the nexus argument because it determined Cagley had no legitimate expectation of privacy in his mother's car parked outside of the bank, in which he had been only a passenger.  We agree with the district court's reasoning.  *See State v. Nucaro*, 614 N.W.2d 856, 859 (Iowa Ct. App. 2000) (relying on *Rakas v. Ill.*, 439 U.S. 128 (1978)).

---

[2] Cagley cites to both the Fourth Amendment and article 1, section 8 of the Iowa Constitution.  As Cagley has not asked us to interpret the state provision differently, our discussion of the Fourth Amendment applies equally to his Iowa constitutional claim. *See State v. Wilkes*, 756 N.W.2d 838, 842 n.1 (Iowa 2008).

"Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Rakas*, 439 U.S. at 133–34. Cagley could assert a suppression claim on Fourth Amendment grounds only if the breached expectation of privacy was his own rather than that of a third party. *See id.*; *see also Alderman v. United States*, 394 U.S. 165, 171–72 (1969) ("[S]uppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence."). Cagley bears the burden to prove his Fourth Amendment rights were violated by the challenged search. *Rawlings v. Kentucky*, 448 U.S. 98, 104–05 (1980); *State v. Halliburton*, 539 N.W.2d 339, 342 (Iowa 1995). He cannot do so here because he did not own the car listed in the warrant nor did he drive it to the bank.

As a recent passenger in his mother's car, Cagley could not successfully challenge the vehicle search. *See Halliburton*, 539 N.W.2d at 342; *see also State v. Hungerford*, 311 N.W.2d 699, 700 (Iowa Ct. App. 1981). Because the car was registered to his mother and driven by his brother, Cagley enjoyed no possessory or property interest in it, and therefore, he had no reasonable expectation of privacy allowing him to contest the search warrant. *See Rakas*, 439 U.S. at 148–49 (holding passenger who asserts neither a possessory nor a property interest in a vehicle would not have a legitimate expectation of privacy in the vehicle); *United States v. Smith*, 621 F.2d 483, 487 (2d Cir. 1980) (finding defendant lacked legitimate expectation of privacy in a car he did not own).

Because Cagley does not have a legitimate expectation of privacy allowing him to challenge the search warrant, we do not address his nexus argument.

**B.  No exclusion of evidence as fruit of the poisonous tree**

Cagley next contends his statement revealing the presence of a methamphetamine lab in the car was "only made in response to officers informing him that the car would be searched."  He argues their show of authority was improper because the warrant lacked a nexus between the place to be searched and the stolen items sought.  From those premises, he asserts the incriminating evidence found in the gym bag is inadmissible under the fruit-of-the-poisonous-tree doctrine.

The phrase "fruit of the poisonous tree"—first coined in *Nardone v. United States*, 308 U.S. 338, 341 (1939)—illustrates the idea of secondary evidence obtained as a result of a prior illegality.  Under the doctrine, "fruits" are excluded from trial if they were obtained by exploiting the prior illegality.  *See Wong Sun v. United States,* 371 U.S. 471, 487–88 (1963).  "Thus, the doctrine operates as an extension of the exclusionary rule."  *Lane*, 726 N.W.2d at 380.

Because it is an extension of the exclusionary rule, the fruit-of-the-poisonous-tree doctrine applies only when the defendant has the ability to challenge the original Fourth Amendment violation, which would constitute the poisonous tree.  *See United States v. Salvucci*, 448 U.S. 83, 85 (1980).  So even if we were to assume the search warrant was invalid, the officers' announcement

of their intent to search did not taint Cagley's revelation that the car contained a methamphetamine lab. The fruits doctrine does not benefit Cagley. *See id.*

Finally, after Cagley told officers there was a "meth lab" in the car, the officers had probable cause independent of the warrant to search the vehicle. Exigent circumstances also existed to support a warrantless search of the gym bag based on the mobility of the car and the danger posed to the car's remaining occupants and the public by a mobile methamphetamine lab. *See State v. Simmons*, 714 N.W.2d 264, 273 (Iowa 2006); *State v. Hoskins*, 711 N.W.2d 720, 726 (Iowa 2006).

The district court properly denied Cagley's motion to suppress the evidence found in the gym bag. Accordingly, his conviction stands.

**AFFIRMED.**