# IN THE COURT OF APPEALS OF IOWA

No. 15-1976
Filed February 8, 2017

**ERIC EARL HOUK,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____


Appeal from the Iowa District Court for Taylor County, Dustria A. Relph, Judge.


Eric Houk appeals the district court's denial of his postconviction relief claims. **AFFIRMED.**


Stephen P. Dowil of Booth Law Firm, Osceola, for appellant.

Thomas J. Miller, Attorney General, and Sheryl A. Soich, Assistant Attorney General, for appellee State.


Considered by Vaitheswaran, P.J., and Potterfield and Bower, JJ.

**VAITHESWARAN, Presiding Judge.**

A jury found Eric Houk guilty of first-degree kidnapping, second-degree arson, and three counts of third-degree sexual abuse, in connection with the confinement, removal, and sexual assault of a young woman, M.F., and the subsequent destruction of evidence. This court conditionally affirmed his conviction. *State v. Houk*, No. 08-2067, 2010 WL 1052085, at *3-4 (Iowa Ct. App. Mar. 24, 2010) (affirming and remanding for application of correct standard on review of new trial motion). Houk filed an application for postconviction relief, which he amended and supplemented.

The State moved for summary judgment. The court granted the motion on all but one of the claims. Following consideration of written arguments, the court denied the remaining claim. Houk appealed.

Houk raises his claims under an ineffective-assistance-of counsel rubric. To succeed, he must show (1) the breach of an essential duty and (2) prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). "If we conclude a claimant has failed to establish either of these elements, we need not address the remaining element." *Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015).

## I.    *Use of Stun Belt*

Houk claims his trial attorney was ineffective in failing to seek a hearing prior to the State's placement of a stun belt around his waist. The belt, worn beneath his clothing, was a security apparatus that allowed officers to shock Houk with an electrical current and immobilize him if he attempted to flee or if he or others became disruptive during trial.

In resolving this claim, we elect to focus on the *Strickland* prejudice prong. This prong requires a postconviction relief applicant to establish a reasonable probability of a different outcome. *See Strickland*, 466 U.S. at 694; *cf. State v. Wilson*, 406 N.W.2d 442, 448 (Iowa 1987) ("[T]he defendant has the burden to show the incident prejudicially affected the jury or that his ability to present his defense was impaired as a result of his being seen in shackles."); *State v. Blodgett*, No. 03-0229, 2003 WL 22900539, at *3 (Iowa Ct. App. Dec. 10, 2003) (same). *But see Ledezma v. State*, 626 N.W.2d 134, 143 (Iowa 2001) (stating "in *Strickland v. Washington*, the Supreme Court rejected the claim by the defendant that prejudice was established when the attorney's unprofessional errors resulted in a mere impairment of the presentation of the defense").

Our de novo review of the record reveals the following facts. A retired Taylor County sheriff testified that, unlike shackles, the stun belt was not visible to the jury and, unlike knee braces, the belt did not "lock up," requiring personnel to release it within possible eyesight of the jury. The retired sheriff testified the only problem conveyed to him by personnel inside the courtroom was a need to readjust the belt, which was done during a break outside the jury's presence.

Houk did not refute this testimony. There was no indication that any member of the jury saw the belt or that officers shocked him with it. *See State v. Buchanan*, No. 03-0230, 2004 WL 1071896, at *4-5 (Iowa Ct. App. May 14, 2004) (distinguishing cases involving the prejudicial effect of having a defendant "in the presence of the jury for an extended period of time in prison attire, restraints, or both").

Houk nonetheless asserts his fear of being shocked made it difficult to concentrate on the proceedings and this difficulty established *Strickland* prejudice. Houk did not express any concerns about the belt during trial. According to the sheriff, he passed notes to his attorney and was never seen "sitting rigidly in his chair as though he was afraid to move."

Nor is there evidentiary support for Houk's assertion that the stun belt compelled him to change "his trial strategy" or prevented him from fully questioning "the credibility of the victim." Houk's attorney cross-examined the complaining witness extensively. The trial record does not reflect that the belt inhibited Houk from consulting with his attorney during cross-examination or, indeed, during any part of her testimony.

Finally, the evidence of guilt was overwhelming. *See State v. Ambrose*, 861 N.W.2d 550, 559 (Iowa 2015). The State meticulously established Houk's entry into M.F.'s car shortly before she completed her shift at a local grocery store, his multiple sexual assaults at various locations, and his decision to partially destroy the evidence by setting fire to M.F.'s vehicle.

Houk asserted the multiple sex acts were consensual, as was the binding of her hands and feet with duct tape. Even without the benefit of seeing or hearing him testify, his defense rings hollow. We conclude Houk failed to establish a reasonable probability of a different outcome had counsel sought and obtained a hearing on the use of the belt. *Strickland*, 466 U.S. at 694.

## II. Challenges to Jury Instructions

In a pro se brief, Houk raises several challenges to the jury instructions under an ineffective-assistance-of-counsel rubric.

*A. Confinement Instruction*

Houk's first challenge is to an instruction on the meaning of confinement for purposes of the kidnapping charge. Houk asks us to consider the view of a special concurrence in a recent Iowa Supreme Court opinion, *State v. Robinson*, 859 N.W.2d 464, 488 (Iowa 2015) (Wiggins, J., concurring specially). In *Robinson*, as in this case, the district court separately instructed the jury on the meaning of "confinement." *See Robinson*, 859 N.W.2d at 488. The instruction in *Robinson* failed to include two intensifiers required by our precedent on kidnapping: a "substantial" increase in the risk of harm to the victim or a "significant" decrease in the risk of detection. *Id.* (*citing State v. Rich*, 305 N.W.2d 739, 745 (Iowa 1981)). The special concurrence would have found these omissions inconsistent with *Rich* and would have concluded defense counsel breached an essential duty in failing to object to the instruction, which prejudiced the defendant "in a factually close case such as this." *Id.* at 492.

Assuming without deciding that Houk's trial attorney breached an essential duty in failing to object to the absence of the quoted intensifiers, we cannot find *Strickland* prejudice. Unlike *Robinson*, this was not a close case; as we have already discussed, the evidence was overwhelming. Accordingly, there is no reasonable probability of a different outcome. *See State v. Ronnau*, 14-0787, 2016 WL 351314, at *10 (Iowa Ct. App. Jan. 27, 2016) (finding "no reasonable probability of a different outcome had counsel objected to the uniform jury instruction" on confinement).

*B.  Kidnapping Instruction*

Houk asserts the kidnapping instruction allowed "the jury to convict without finding all of the elements as prescribed by Iowa Code [section] 710.2, namely that the victim was intentionally subjected to sexual abuse as a consequence of the kidnapping."  He focuses on the last element of the kidnapping instruction, which required the State to prove, "As a result of the removal and/or confinement [M.F.] was sexually abused."  In his view, this language is inconsistent with the statute, which requires proof of a "completed kidnapping" rather than "proof of a simple confinement or removal."[1]  This court addressed and rejected the identical argument in *Ronnau*.  *See id.* at *9.  The court stated:

> [W]hen the phrase "as a result of the confinement or removal" is read in context, it is clearly referring to the defendant's kidnapping of the victim. . . .  [I]t is clear that when the marshalling instruction is read in conjunction with the instruction defining confinement or removal . . . the jury instructions in this case correctly conveyed the law and elements of the offense of first-degree kidnapping.

*Id.*  We find this reasoning persuasive.  Assuming counsel had a duty to object to the instruction on the ground that it failed to track the language of section 710.2, Houk was not prejudiced by the omission because the instructions as a whole properly conveyed the elements of the crime.  *See id.*

*C.  "Serious Injury" Instruction*

Houk takes issue with the following definition of "serious injury" provided to the jury:

---

[1] Section 710.2 states, "Kidnapping is kidnapping in the first degree when the person kidnapped, *as a consequence of the kidnapping*, suffers serious injury, or is intentionally subjected to torture or sexual abuse."  (Emphasis added.)

> A serious injury is a disabling mental illness, a condition which cripples, incapacitates, weakens or destroys a person's normal mental functions, and/or bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement or extended loss or impairment of the function of any bodily part or organ. "Serious injury" includes but is not limited to skull fractures and rib fractures.

Houk contends the inclusion of "skull fractures and rib fractures" was improper because "in cases of adults, [these] are [not] per se serious injury."[2] Houk could not establish a reasonable probability of a different outcome had the challenged language been removed. As the district court determined, "at worst, the language is mere surplusage." The court concluded, "There was no evidence of skull or rib fractures with respect to the victim in this case, thus no possibility that the jury could have determined that such evidence was sufficient to constitute a serious injury under the sentence." *See State v. Maxwell*, 743 N.W.2d 185, 197 (Iowa 2008) ("When the submission of a superfluous jury instruction does not give rise to a reasonable probability the outcome of the proceeding would have been different had counsel not erred, in the context of an ineffective-assistance-of-counsel claim, no prejudice results." (internal citation omitted)).

*D. "Dangerous Weapon" Instruction*

Dangerous weapon was defined for the jury as follows:

> [A]ny device or instrument designed primarily for use in inflicting death or injury, and when used in its designed manner is capable of inflicting death. It is also any sort of instrument or device actually used in such a way as to indicate the user intended to inflict death or serious injury, and when so used is capable of inflicting death.

---

[2] Iowa Code section 702.18(2) states, "'Serious injury' includes but is not limited to skull fractures, rib fractures, and metaphyseal fractures of the long bones of children under the age of four years."

The term appeared in the marshalling instruction on second-degree sexual abuse.

Houk appears to argue the instruction should not have been given because there was insufficient evidence to prove second-degree sexual abuse by use of a dangerous weapon. Houk failed to establish *Strickland* prejudice because the jury did not find him guilty of second-degree sexual abuse. As the district court concluded,

> [T]he jury did not consider the offense of sexual abuse in the second degree because it convicted [Houk] of the greater offense of first degree kidnapping. [Houk] could not have been prejudiced by an instruction that the jury would not consider if it followed the court's instructions, which it is presumed to have done.

*E. Instruction on Third-Degree Kidnapping*

Houk challenges an instruction on third-degree kidnapping and, specifically, the element requiring proof of specific intent to "secretly confine [M.F.]" He points to the State's removal of any allegation of secret confinement as an alternate charging ground. Again, Houk failed to establish *Strickland* prejudice. As the district court stated,

> [T]he jury did not consider the offense of kidnapping in the third degree because it convicted [Houk] of the greater offense of first degree kidnapping. [Houk] could not have been prejudiced by an instruction that the jury would not consider if it followed the court's instructions, which it is presumed to have done.

*F. Second-Degree Kidnapping Instruction*

Houk claims he "was entitled to a . . . second-degree kidnapping instruction as the primary lesser included offense as guaranteed by the Iowa Constitution." Second-degree kidnapping is "[k]idnapping where the purpose is to hold the victim for ransom or where the kidnapper is armed with a dangerous

weapon." Iowa Code § 710.3 (2007). In Houk's view, the State must have believed a dangerous weapon was involved in light of its request for a "dangerous weapon" instruction and, if there was substantial evidence of a dangerous weapon, the second-degree kidnapping instruction was warranted.

The district court concluded second-degree kidnapping was not a lesser included offense of first-degree kidnapping. The court reasoned as follows: "A conviction of first degree kidnapping can . . . occur without necessarily including second degree kidnapping since sexual abuse is not an element of second degree kidnapping and neither option for the commission of second degree kidnapping is required for first degree kidnapping." We agree with this conclusion. *See State v. Bitzan*, No. 12-0551, 2013 WL 3273813, at *4 (Iowa Ct. App. June 26, 2013) (concluding where the State charged first-degree kidnapping under sexual-abuse alternative, "second-degree kidnapping [was] not a lesser-included offense" and "defense counsel was not ineffective because counsel has no duty to pursue a meritless issue"). Counsel did not breach an essential duty in failing to insist on a second-degree kidnapping instruction.

## III. Trial Information

Houk claims the "trial information and subsequent verdicts and judgment . . . are void due to the lack of sufficient factual specificity." As the district court concluded, "The minutes in this case are detailed and clearly support each of the charges filed." *See State v. Grice*, 515 N.W.2d 20, 23 (Iowa 1994) ("Iowa courts consider both the indictment or information and the minutes filed when determining the adequacy of the allegations to apprise the accused of the crime

charged."). Counsel did not breach an essential duty in failing to challenge the trial information.

## IV. *Ineffective Assistance of Appellate Counsel*

Houk claims his appellate attorney was ineffective in failing to raise the ineffectiveness of trial counsel. We no longer require ineffective-assistance-of-counsel claims to be raised on direct appeal to preserve them for postconviction relief. *See* Iowa Code § 814.7(1) (2016) ("An ineffective assistance of counsel claim . . . need not be raised on direct appeal . . . in order to preserve the claim for postconviction relief purposes."). Accordingly, we conclude appellate counsel did not breach an essential duty in failing to raise the ineffective-assistance claims Houk later raised in his postconviction relief application

## V. *Search Warrants*

Houk contends search warrants issued in the case were void. He asserts that the "search warrant application affidavit" failed to demonstrate "a nexus between criminal activity and the 2004 red Dodge vehicle that was searched at [his] residence."

In determining whether probable cause exists to issue a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [the magistrate], . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Hoskins*, 711 N.W.2d 720, 727 (Iowa 2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)); *see also State v. McNeal*, 867 N.W.2d 91, 100 (Iowa 2015) ("[T]he affidavit of probable cause is

interpreted in a common sense, rather than a hypertechnical, manner." (citation omitted)).

The district court addressed this claim as follows,

[T]he search warrant application recites that the victim and [Houk] were located leaving [Houk's] residence when [he] was apprehended. At that time, according to the search warrant application, the only vehicle at [Houk's] residence was the red Dodge pickup truck. Since his residence was in a rural area, it is logical to assume that they did not arrive at the residence on foot and used the pickup truck to get there. The search warrant application also affirmatively indicates that [Houk] and the victim drove to [his] residence.

Further, the search warrant application indicates that a red pickup truck was seen at the area where it was believed that the victim had been abducted, that this truck left tire tracks, and that the pickup truck at [Houk's] residence had tires with tread similar to the tracks found at the scene of the abduction. The victim's car had also been found burning behind the Junction Café in Bedford, some distance form [Houk's] residence, further lending support to the assumption that the pickup truck was the means of transportation from the scene of the abduction to [Houk's] residence.

. . . .

[A]n attorney is not incompetent for failing to pursue a meritless issue. [Houk's] arguments are wholly without merit and a motion to suppress would have been denied. There can be no prejudice to [Houk] for his trial counsel failing to attack the search warrants . . . .

On our de novo review of the search warrant application, we concur in this analysis. There is no question the State established a sufficient nexus to support the search warrant application. Accordingly, counsel did not breach an essential duty in failing to challenge the search warrant.

## VI. *Prosecutorial Misconduct*

Houk claims "the prosecutor committed misconduct by falsely characterizing evidence." He contends the prosecutor misled the jury by

"consistently misidentify[ying] a red mark on [M.F.'s] left hand as a bruise" rather than a "petechial." The district court stated,

> [T]he difference between a bruise and a petechial is one of degree of subcutaneous bleeding, with a bruise representing a relatively greater amount of bleeding. Both terms refer to an injury suffered by the victim and there is no reason to believe based on this record that referring to the victim's injury by the correct medical term instead of the common lay term would have made any difference in the outcome of this case. The jury had a picture of the victim's hand where the injury was located and was free to assess the significance of that injury without regard to the terminology used to describe it.

We fully concur in this analysis. Counsel did not breach an essential duty in failing to challenge the prosecutor's use of the term "bruise."

## VII. Jury Selection

Houk contends "the district court erred and abused its discretion . . . by overruling challenges for cause which, forced [him] to use all of his peremptory strikes and forced incompetent jurors upon him."

A juror may be removed for cause where "the juror holds such a fixed opinion on the merits of the case that he or she cannot judge impartially the guilt or innocence of the defendant." *State v. Neuendorf*, 509 N.W.2d 743, 746 (Iowa 1993) (*citing State v. Gavin*, 360 N.W.2d 817, 819 (Iowa 1985)). The "partiality of a juror may not be made the basis for reversal in instances in which that juror has been removed through exercise of a peremptory challenge." *Id.* at 747. A peremptory challenge "serve[s] as a safeguard against an unjust conviction." *State v. Mootz*, 808 N.W.2d 207, 223 (Iowa 2012).

During jury selection, Houk's attorney challenged juror D.E. for cause. The district court denied the challenge. We are persuaded D.E. should have

been removed for cause. D.E. repeatedly equivocated on whether he could be fair and impartial. He conceded he made "some pretty strong statements" about the case when it first arose, essentially commenting on "what they should do with people that are responsible for basically wrecking a girl's life." When asked what he thought should happen, he stated, "Whoever is responsible for it should not see daylight again." While he did not assert Houk was guilty, he stated he did not "know" whether he could set aside his prior views. These were not the words of an impartial juror. *See Neuendorf*, 509 N.W.2d at 745 (concluding juror who simply stated he would "try" to judge the defendant on what he did or did not do should have been removed for cause).

Houk's attorney also challenged juror T.G. for cause. The district court denied the challenge. Again, we are persuaded T.G. should have been removed for cause. She stated "when they find a girl that they are looking for at someone's house, it is kind of hard not to form some sort of an opinion." When asked whether she could put this opinion aside, she responded, "You've got to completely forget everything you heard? Probably not." She continued, "[I]t would be harder to presume probably that he is innocent." When advised she was required to presume him innocent and asked whether she could do that, she responded, "I'm not so sure." These were not the words of an impartial juror.

That said, the failure to have these jurors removed for cause could not be laid at defense counsel's doorstep. Because Houk's attorney challenged both jurors for cause, Houk failed to establish the breach of an essential duty.

Houk also failed to establish *Strickland* prejudice. As in *Neuendorf*, the prosecutor and Houk's attorney exercised several peremptory challenges that

resulted in the removal of these jurors. They did not decide Houk's guilt. *Cf. Mootz*, 808 N.W.2d at 222 (distinguishing *Neuendorf* on the ground that the defendant "was denied the opportunity to exercise a peremptory challenge against a specific juror").

Houk next asserts his attorney should have stricken juror J.A. on the basis of the juror's disclosure that he was sexually assaulted as a child.

Iowa Rule of Criminal Procedure 2.18(5)(m) allows a challenge for cause where "the juror is a . . . complainant against the defendant or any other person indicted for a similar offense." J.A. declined to disclose his childhood abuse by a "dirty old man" until he was forty-four years old. We surmise, then, that J.A. was not a complainant in a criminal charge against the man. For that reason, rule 2.18(5)(m) does not apply.

Additionally, the similarities between J.A.'s experience and that of M.F. were not "striking." *See State v. Hatter*, 381 N.W.2d 370, 372 (Iowa 1985). And, J.A. unequivocally stated he could be fair and impartial notwithstanding his own childhood experience. We are persuaded counsel did not breach an essential duty in failing to challenge this juror for cause or in failing to exercise a peremptory challenge to remove the juror.

## VIII. M.F.'s Medical History

Houk contends his trial attorney was ineffective in failing to "investigate, interview or call as witnesses any of the medical staff regarding the lack of any evidence alluding to a sexual assault." He continues, "[t]here was absolutely no damaging information in the medical report that would have damaged [his] defense or trial strategy." To the contrary, Houk's trial attorney testified,

[T]here was very, very damaging testimony on those medical records and—and there's no way to just allow certain portions in and keep other portions out, because evidence and statements on the—on those medical records corroborated what she said happened to her, and they would have been—basically corroborated her story in regards to what had happened to her, and it would have been bad for [Houk].

Although a sexual assault nurse examiner conceded there was "no evidence of injuries found" during her exam of M.F., she stated, "You can't assume because there are no injuries that [a sexual assault] did not occur." She testified by deposition that "more often than not" a "victim can be subject to sexual assault without actually . . . sustaining any injuries." We conclude counsel did not breach an essential duty in declining to introduce medical evidence.

## IX.    Alleged Exculpatory Videotape

Houk contends he "was denied effective assistance of trial counsel when counsel failed to employ video evidence that . . . supported [his] defense." He asserts his attorney "had access to video that proved that [he] was in the Locker Room Bar until 9:49 p.m." and thus established M.F. "lied about being abducted after getting off of work at 9:04 p.m." As the district court explained,

It would appear that his effort here is to discredit the victim's version of events. The difficulty here is that it also completely discredits [Houk's] version of events as well. He testified at trial that he left the Locker Room bar at 9 p.m. so that he could make contact with the victim when she got off work at 9 p.m. He further testified that he in fact did have contact with the victim at Hy-Vee as she was leaving work and that he then waited in the Hy-Vee parking lot until about 10:30 p.m. for the victim to return. He now argues that the Locker Room videotape conclusively establishes that he was at the Locker Room bar until 9:49 p.m. and that his trial counsel should have introduced it at trial. Had trial counsel done so, he would have conclusively established that [Houk] . . . had lied under oath at trial. There is absolutely no chance that the "failure" of trial counsel to introduce the Locker Room videotape was ineffective assistance of counsel.

On our de novo review, we find this analysis supported by the record. Counsel did not breach an essential duty in failing to introduce a video that would have undermined Houk's testimony and impeached his credibility.

## X.	Double Jeopardy

Houk contends "his multiple sentences of sexual abuse in the third degree" should be vacated "as they are factually and legally lesser included offenses of first degree kidnapping." We need not review this contention under an ineffective-assistance-of-counsel rubric because an illegal sentence may be challenged at any time. *See State v. Walker*, 610 N.W.2d 524, 526 (Iowa 2000) ("An illegal sentence may be urged as a ground for reversal at any time, obviating the need to challenge the error in district court in order to preserve the issue for appeal."); *State v. Halliburton*, 539 N.W.2d 339, 343 (Iowa 1995) ("[I]llegal sentences are not subject to the usual requirements of error preservation and waiver. . . . [Defendant's] conduct in the trial court does not prevent him from claiming on appeal that his sentences violated section 701.9.").

A merger argument is inapplicable where there are "two separate crimes." *Walker*, 610 N.W.2d at 525; *State v. Dittmer*, 653 N.W.2d 774, 777-78 (Iowa Ct. App. 2002). The State charged and proved several separate crimes. Accordingly, Houk was appropriately sentenced for each of the crimes.

We affirm the district court's denial of Houk's postconviction relief application.

**AFFIRMED.**