# IN THE COURT OF APPEALS OF IOWA

No. 16-0686
Filed May 3, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JOHN BARKER III,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Jeffrey L. Harris, District Associate Judge.

A defendant appeals the district court denial of his motion to suppress. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Nan N. Jennisch, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Kyle P. Hanson, Assistant Attorney General, for appellee.

Considered by Danilson, C.J., Vogel, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**BLANE, Senior Judge.**

Defendant John Barker III appeals the district court's denial of his motion to suppress and subsequent conviction for operating while intoxicated (OWI), second offense.  Upon our review, we find the district court properly denied the motion and therefore affirm his conviction.

**I.      *Factual and procedural background.***

At 2:34 a.m. on October 4, 2015, Officer Chris Roberts was patrolling a residential neighborhood in Waterloo.  As he drove north on Ninth Street, Roberts met a southbound car traveling at a high rate of speed, which he estimated to be fifty to sixty miles per hour.  The speed limit was thirty miles per hour.  He testified that based on his training and experience, it was "pretty obvious" the vehicle was "traveling a lot faster" than the speed limit.

Officer Roberts has been a peace officer since graduating from the Iowa Law Enforcement Academy in 2007.  He received training on speed detection using radar and LiDAR (light and radar).  That training included learning how to estimate speed "just with the naked eye," and Roberts had to pass a test by accurately estimating the speed of moving vehicles.

By the time Roberts had turned around, the speeding car had turned onto a side street.  When he caught up, the car was stopped in the middle of the street such that it would have blocked oncoming traffic.  The car stayed there for fifteen to thirty seconds, two men got out, and the car "took off."  Roberts stopped to speak with the two passengers, and he broadcast his location over his patrol car's radio to other officers, requesting assistance in stopping a blue, four-door Chrysler 200 with New Jersey license plates.

Officer Nathan Watson was in the area and heard over the police radio the suspect car's description. He observed the vehicle and initiated a traffic stop when the car stopped for a stop sign. Upon approaching the car, Watson determined defendant John Barker III was driving and observed Barker smelled of alcohol and had bloodshot, watery eyes. Officer Nicholas Weber arrived to assist with the traffic stop. He too noticed Barker smelled of alcohol and had bloodshot, watery eyes. Barker scored six of six clues on the horizontal gaze nystagmus test, but he did not perform the walk-and-turn or one-leg-stand tests due to physical limitations. He provided a breath sample for a preliminary breath test, which indicated an alcohol concentration over the legal limit. At the police station, a DataMaster breath test indicated Barker's blood alcohol concentration (BAC) was .104.

On November 2, 2015, Barker was charged by trial information with OWI, second offense, in violation of Iowa Code section 321J.2 (2015). The charge was enhanced based on Barker's prior OWI conviction entered on July 31, 2012, in Black Hawk County. On December 16, 2015, Barker filed a motion to suppress, claiming the officer's stop violated his rights under the United States and Iowa Constitutions. Following a January 20, 2016 suppression hearing, the district court denied the motion to suppress.

On February 26, 2016, Barker waived his right to a jury trial, and the case proceeded to a bench trial based upon the minutes of evidence. The court found Barker guilty of OWI, second offense. Barker filed timely notice of appeal on April 20, 2016.

**II.     *Standard of review.***

"We review the district court's denial of a motion to suppress based on the deprivation of a constitutional right de novo." *In re Pardee*, 872 N.W.2d 384, 390 (Iowa 2015). "A de novo review constitutes an independent evaluation of the totality of the circumstances as shown by the entire record." *State v. Tyler*, 830 N.W.2d 288, 291 (Iowa 2013) (citation and internal quotation marks omitted). Deference is given to the district court's factual findings based on the court's opportunity to observe the witnesses, but such findings are not binding. *See id.*

**III.     *Discussion.***

As he did in his motion to suppress, Barker maintains on appeal that the officers' stop of his vehicle was unconstitutional in violation of the "Fourth Amendment to the Constitution of the United States and article I, section 8 of the Iowa Constitution." Specifically, he argues that an officer's visual observation and estimate that he was exceeding the speed limit is not sufficient probable cause to stop his vehicle.

"Our federal and state constitutions protect people from unreasonable searches and seizures." *State v. Hoskins*, 711 N.W.2d 720, 725 (Iowa 2006) (citing U.S. Const. amend IV; Iowa Const. art I, § 8; *State v. Cline*, 617 N.W.2d 277, 281 (Iowa 2000)). "Warrantless searches and seizures are per se unreasonable, unless one of the few carefully drawn exceptions to the warrant requirement exists." *Id.* at 726. Thus, for the court to find the stop was lawful, the State must prove by a preponderance of the evidence that a recognized exception to the warrant requirement applies. *Id.*

A traffic stop is permissible under our Iowa and United States Constitutions when supported by probable cause or reasonable suspicion of a crime. *Delaware v. Prouse,* 440 U.S. 648, 654–55 (1979); *State v. Pals,* 805 N.W.2d 767, 774 (Iowa 2011); *State v. Tague,* 676 N.W.2d 197, 201, 204 (Iowa 2004). Stopping a vehicle and detaining the occupants is not an unreasonable seizure when the officer has either (1) probable cause to stop the vehicle due to observation of a traffic violation or (2) reasonable suspicion of criminal activity, supported by articulable facts that a criminal act has occurred or is occurring. *Tague*, 676 N.W.2d at 201–04. When a peace officer observes any type of traffic offense, the violation establishes both probable cause to stop the vehicle and reasonable suspicion to investigate. *State v. McIver*, 858 N.W.2d 699, 702 (Iowa 2015) (citing *State v. Harrison*, 846 N.W.2d 362, 365 (Iowa 2014)).

Here, the officer observed two traffic violations—speeding and stopping in the center of the roadway. Under *McIver*, either one of these would provide the officer with probable cause to stop and reasonable suspicion to investigate. Barker argues that his case is so similar to one of our unreported cases that it should control and support suppression of the stop. In *State v. Petzoldt*, No. 10-0861, 2011 WL 2556961, at *3-4 (Iowa Ct. App. June 29, 2011), a panel of this court found:

> Here, Officer King testified he was playing Solitaire when observed Petzoldt's pickup truck briefly as it passed in front of his patrol car. Although he testified he believed the truck was travelling at a speed greater than the posted speed limit, Officer King made no estimate as to how fast the truck was travelling or how much over the posted limit he thought the pickup was travelling. The posted speed limit is not even in the record before us.[] Officer King's visual estimate of speed was not confirmed by any other means of corroboration of the speed, such as radar or pacing.[]

Officer King observed no other traffic infractions or driving anomalies by the pickup. He reached his conclusion based upon "years of experience looking at vehicles and the speeds they are going," something he did every day in his job as a thirty-one-year veteran of the police force. Further, he said that as he attempted to catch up to the pickup, he "could tell that it was still going over the speed limit." Officer King did not charge Petzoldt with speeding. The speed of Petzoldt's truck cannot be discerned from viewing the video taken by Officer King's dashboard-mounted camera.

Officer King's testimony is solely conclusory. Having failed to articulate his observations of the movement of the Petzoldt truck in his testimony, Officer King's opinion lacks any factual foundation. Other than relying on his experience as a police officer, he failed to express any reasons for his belief the truck was speeding.

In the present case, Officer Roberts testified not only to his background and training in making estimates of speed, but he formed the opinion that Barker's car was travelling an estimated fifty miles per hour, which was twenty miles per hour over the posted thirty miles-per-hour limit. Roberts's observation, distinct from the finding in *Petzoldt*, was made of Barker's vehicle for a lengthy period of time as it approached and then passed Roberts. Roberts also gave a specific estimate of speed that was readily discernable as exceeding the posted limit in a residential neighborhood. Additionally, Roberts, unlike Officer King, observed a separate violation—Barker stopping his vehicle in the middle of the street to discharge his passengers. *See* Iowa Code § 321.358(11) ("No person shall stop . . . a vehicle, except when necessary to avoid conflict with other traffic or in compliance with the directions of a police officer or traffic-control device . . . [o]n the roadway side of any vehicle stopped or parked at the edge or curb of a street.").

Barker would have us adopt a standard that an officer's mere observation and estimation that his vehicle exceeded the speed limit, without some other

objective verification such as radar or following behind and pacing the speed, cannot rise to the level of probable cause for a stop. *Petzoldt* does not mandate such a standard. The State has the burden "to prove by a preponderance of the evidence that the officer had probable cause to stop the vehicle. If the State does not meet this burden, the evidence obtained through the stop must be suppressed." *State v. Louwrens*, 792 N.W.2d 649, 651–52 (Iowa 2010) (internal citations omitted). An officer's visual observations, whether as to speed or some other activity that would support a finding of probable cause or reasonable suspicion, may be sufficient to meet the preponderance-of-evidence requirement. *See State v. Konvalinka*, No. 11-0777, 2012 WL 1860352, at *6 (Iowa Ct. App. May 23, 2013) (stating cases such as this require "case-specific inquiry into the officer's training and experience, the nature and extent of the opportunity which the officer had to view the moving vehicle, and the magnitude of the variance between the estimated speed and the speed limit"). In *Petzoldt,* this court found the officer's opinion that the vehicle exceeded the speed limit was not proved by the preponderance standard. We find the facts in this case substantially different from those in *Petzoldt*; they meet the preponderance standard*. See, e.g., State v. Johnson*, No. 14-0833, 2015 WL 1817108, at *3 (Iowa Ct. App. Apr. 22, 2015) (affirming denial of motion to suppress where officer had initiated stop due to defendant exceeding posted speed limit, where officer had determined defendant was speeding "based upon his specific training and experience in visually determining the speed of vehicles"); *State v. Jerde*, No. 00-0605, 2001 WL 854856, at *2 (Iowa Ct. App. July 31, 2001) (finding officer's testimony about speed of defendant's vehicle was sufficient evidence to support defendant's

conviction, where officer's estimate of speed was based on his experience and speed of officer's vehicle in comparison).

We find the district court properly found the officers had probable cause to stop Barker's vehicle and correctly denied his motion to suppress.

**AFFIRMED.**